[Civ. No. 32744. Second Dist., Div. Four. Aug. 26, 1969.]

MID-CENTURY INSURANCE CO., Plaintiff, Cross-complainant and Appellant, v. VALENTINE HERNANDEZ et al., Defendants, Cross-defendants and Respondents; GALBRAITH'S CYCLE FUN, INC., Defendant, Cross-defendant and Appellant; TRAVELERS INDEMNITY CO., Defendant, Cross-complainant and Respondent; STUYVESANT INSURANCE CO., Cross-complainant and Appellant.

Archbald, Zelezny & Spray, Joseph L. Spray and Edward L. Lascher for Plaintiff, Cross-complainant and Appellant.

Buck, Burrows & Smith and Peter Burrows for Defendant, Cross-defendant and Appellant, and for Cross-complainant and Appellant.

Eckert & O'Gorman and Charles V. Eckert III for Defendants, Cross-defendant and Respondents.

Barnes, Benton, Orr, Duval & Buckingham and Edwin Duval for Defendant, Cross-complainant and Respondent.

KINGSLEY, J.—On July 4, 1965, defendant Valentine Hernandez (Valentine), while operating a motorcycle rented to him by Galbraith's Cycle Fun, Inc. (Galbraith's), was involved in a collision with Raul Torres (Torres), in which Torres received physical injuries. Torres brought suit against Valentine, his parents Soledad and Incarnacion Hernandez[1] (Soledad and Incarnacion), and Galbraith's.[2] He recovered a judgment against Valentine for $20,000, of which $10,000 was jointly against Valentine and his parents and $10,000 was jointly against Valentine and Galbraith's.[3]

The present action is one in declaratory relief, primarily between three insurance companies, each of whom had issued a policy that arguably provided coverage to one or more of the judgment debtors. Mid-Century Insurance Company (Mid-Century) had issued an automobile liability insurance policy, with a policy limit of $10,000 for injury to one person, in which Valentine was the named insured, covering a described 1956 Chevrolet automobile owned by him. Travelers Indemnity Company (Travelers) had issued a so-called "Family Automobile Policy," with a policy limit of $10,000 for injury to one person, in which Soledad Hernandez was the named

---

[1] Valentine was a minor, aged 18; Soledad and Incarnacion are liable, to the extent of $10,000, because they had signed his application for an operator's license. (Veh. Code, §§ 17707 and 17709.)

[2] Galbraith's, as the owner of the motorcycle, is liable, also to the extent of $10,000, under Vehicle Code, sections 17150 and 17151.

[3] We state the judgment according to its legal effect. In form, the judgment read as follows:

"(A) That plaintiff have and recover judgment against defendants Valentine Hernandez, Soledad Hernandez and Incarnacion Hernandez, jointly and severally, in the sum of $10,000.

"That said judgment against Soledad and Incarnacion Hernandez is founded solely upon their liability for signing and verifying the application of Valentine Hernandez, a minor, for a driver's license in the manner and style described by the provisions of California Vehicle Code Section 17707.

"(B) That plaintiff have and recover judgment against Valentine Hernandez and Galbraith's Cycle Fun, Inc. a corporation, jointly and severally, in the additional sum of $10,000.

"That said judgment against Galbraith's Cycle Fun, Inc., a corporation, is founded solely upon its liability as the registered owner of the vehicle permissively operated by defendant Valentine Hernandez within the meaning of the provisions of California Vehicle Code Section 17150, agency not being involved.

"(C) That the provisions of paragraphs (A) and (B) of this judgment are cumulative to the end that payment of the total sum of $20,000.00 plus interest, if any, accrued thereon, shall be required to satisfy this judgment in full."

insured,[4] covering two automobiles owned by him and described therein. Stuyvesant Insurance Company (Stuyvesant) had issued a policy, with a policy limit of $300,000 for bodily injury resulting from any one accident, in which Galbraith's was the named insured, covering it in its business of motorcycle rentals. Each policy contained provisions relating to insurance coverage for persons other than the respective named insureds, relating to nonowned automobiles, and dealing with the extent of coverage and liability in cases of double insurance. We discuss the various clauses of that nature later in this opinion.

The trial court entered a judgment holding that Stuyvesant was primarily liable, with coverage limited to $10,000 on the judgment against Valentine, but with available coverage up to $300,000 on the judgments against Galbraith's and against Soledad and Incarnacion.[5] Mid-Century was held to have coverage, as excess over Stuyvesant, to the $10,000 limit of its policy. Travelers was held to have coverage, as excess over both Mid-Century and Stuyvesant, to the $10,000 limit of its policy.

Mid-Century and Stuyvesant have appealed; Travelers has not appealed and its brief supports the judgment as entered; Galbraith's, represented by the same counsel as Stuyvesant, joins in that company's appeal and contentions; Torres and the three Hernandez have not appealed.[6]

It is admitted that, no matter what determination is made as to the various contentions of the three insurance companies, some combination of them will be liable to pay the full $20,000 of Torres' judgment and that the three Hernandez will be protected against that judgment. Although Galbraith's has joined in the appeal taken by its insurance carrier, its $10,000 liability is covered by its policy with Stuyvesant, no matter what other liability that insurance company may have toward the three Hernandez and Torres.[7] In other

---

[4] By stipulation, Travelers agreed that Incarnacion was to be treated as an additional named insured under its policy.

[5] Since, as explained in footnote Nos. 1, 2 and 3, *supra*, the judgments against Galbraith's and against the senior Hernandez are each limited to their respective statutory liability of $10,000, it follows that Stuyvesant is actually subject to a maximum liability of $20,000 under any theory.

[6] Torres and the three Hernandez were named as parties respondent on this appeal. Their respective counsel have filed notices of appearance but, because Torres will recover his judgment, and the Hernandez will be protected against liability, no matter how the appeal is decided, they did not file briefs or participate in the oral argument.

[7] In its closing brief Mid-Century, for the first time, objects to the

words, the present appeal involves only: (1) the question of whether or not Mid-Century has coverage at all; and (2) the amount and order of liability of each company ultimately determined to have provided coverage for the accident.

The case was tried below on the terms of the three policies, with no extrinsic evidence except certain stipulations. As a result, the meaning and effect of those documents are matters for this court to decide, for itself, as matters of law. (*Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839].)

Stuyvesant admits that its policy provided coverage to the three Hernandez and to Galbraith's; its contentions here go only to the amount of that coverage and to the order of its liability vis-a-vis the other two companies.

Travelers, which has not appealed, for obvious reasons, is content with its position as third in line for liability.

Mid-Century denies that its policy covered the accident at all; as an alternative it argues that if it had any liability such liability was (as the trial court held) excess over Stuyvesant's and should be prorated with the liability of Travelers.

We shall discuss, first, as to each policy, whether or not it provided coverage for the injuries to Torres and, if so, for whom and in what amount. Thereafter, we shall discuss the order in which each carrier who has coverage as to Valentine should respond. For reasons which we state later, it is not necessary, on this appeal, to determine the order of liability as to the senior Hernandez or as to Galbraith's.

I

■ We discuss, first, Mid-Century's contention that its policy provided no coverage applicable to the accident herein involved. Its policy, with a limit of liability of $10,000 to any one person, was issued to Valentine and described only a 1956 Chevrolet automobile owned by him. The contention is that the provision of its policy which extended coverage to "non-owned automobiles," by its express terms extended that coverage only to "automobiles," thus excluding "motorcycles" from the protection given. The argument is without merit. The public policy of this state, as expressed in section 11580.1 of the Insurance Code, and sections 16451 and 16452 of the Vehicle Code, as those sections, and their predecessor sections have been construed in *Wildman* v. *Government Emp.*

appearance here of Galbraith's as an appellant. Whatever merit the point might have had, it comes too late for us to consider it.

*Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359], and the later cases applying its rule, is as follows: Any owner's motor vehicle liability policy governed by California law must provide coverage for the vehicle therein described no matter who operates it, so long as that operation is within the continental United States and with the consent of the named insured, unless, by an endorsement conforming to subdivision (e) of the Insurance Code section 11580.1, some particular person is expressly excluded. Any operator's policy must provide coverage for the named insured for any nonowned motor vehicle that he operates, whether therein described or not, so long as the operation is within the continental United States. Any attempt by an insurance company to limit its required coverage is void and ineffective.

It is, of course, quite true, as Mid-Century argues (unnecessarily and at length), that a motorcycle is not an automobile. But a motorcycle admittedly is a "motor vehicle" (Veh. Code, § 400), and the sections of the Insurance Code and of the Vehicle Code above cited, and the policy expressed in those sections, apply to all "motor vehicles," whether they are automobiles or motorcycles.

This was the conclusion reached over six years ago by Division Two of this court, in *Voris* v. *Pacific Indem. Co.* (1963) 213 Cal.App.2d 29 [28 Cal.Rptr. 328]. As Mid-Century correctly points out, *Voris'* technical holding was merely that an uninsured motorist endorsement, executed after the enactment of section 11580.2 of the Insurance Code providing for such coverage, but prior to the effective date of that statute, should be construed to include a motorcycle within the meaning of the word automobile as used in that endorsement. But the reasoning by which that result was reached was that the draftsman of the endorsement had intended to give a coverage equal to that which the then recently enacted but not then yet effective statute would give to future policyholders, and that the statute, by its use of the term "motor vehicle," had included motorcycles. We see no reason why the term "motor vehicle" in section 11580.2 of the Insurance Code should be read more broadly than the same term in the section immediately preceding or in the companion sections (§§ 16451 and 16452) of the Vehicle Code. Therefore, we regard the decision in *Voris* as controlling on this branch of the case at bench.[8]

---

[8]Counsel for Mid-Century cites us to the recent decision by the Appellate Department of the Superior Court for the County of Los Angeles, in *Lightner* v. *Farmers Ins. Exchange* (1969) 274 Cal.App.2d Supp. 928 [79 Cal.Rptr. 526]. That case held that a young man operating

It follows that the Mid-Century policy provided coverage to Valentine. By its express terms, protection was also extended to "relatives" of the named insured, thus bringing Soledad and Incarnacion within the group of those insured under its policy.[9]

## II

██ We turn next to the arguments over the Stuyvesant policy.

That policy raises neither the issue involved with Mid-Century nor the one later discussed that is involved with Travelers. As we have said, Galbraith's was the named insured; the policy expressly covered motorcycles; the motorcycle in question was an "owned" vehicle; and, except for the escape clause hereinafter considered, there is no question that Valentine, as a permissive user of Galbraith's owned motorcycle, and Soledad and Incarnacion as endorsers of Valentine's operator's license, were also insureds under the Stuyvesant policy.

As we have said above, the trial court held that company to be primarily liable, but that its coverage amounted to only $10,000 for Valentine, although it amounted to the full policy limit of $300,000 for Galbraith's and for Soledad and Incarnacion. Mid-Century attacks that judgment only insofar as it limited the Stuyvesant coverage for Valentine to $10,000; Stuyvesant attacks the judgment on the ground that, under the terms of an escape clause in its policy and the statute relating to such clauses, it provided no coverage at all for Valentine, or for the senior Hernandez. We disagree with the trial court and with both Mid-Century and with Stuyvesant.

---

a motorcycle was not covered under the medical insurance clause of a policy describing an automobile. The case is not in point. The policy underlying section 11580.1 of the Insurance Code and sections 16451 and 16452 of the Vehicle Code is concerned with affording insurance protection to injured third parties by making sure that the tortfeasors are insured to a statutorily fixed limit. That policy does not extend to a requirement that the operator of a motor vehicle be covered by insurance for his own injuries. The fact that a provision for a limited degree of medical insurance is included in the same document as one that provides for liability insurance does not make that medical insurance provision a policy of "automobile liability insurance" within the meaning of the cited sections.

[9]The policy includes, as additional insureds with respect to a non-owned automobile: ". . . (1) the named insured or a relative, and (2) any other person or organization not owning or hiring such [described] automobile if legally responsible for its use by the named insured or a relative, but only in the event such named insured or relative is legally liable for the occurrence; provided the actual use of the non-owned automobile by the persons in (1) and (2) above is with the permission, or reasonably believed to be with the permission, of the owner."

Stuyvesant premises its argument on the language of sub-division (f) of section 11580.1 of the Insurance Code and on an escape clause, couched in the following language, and contained in paragraph 7 of Endorsement No. 1 to its policy: "Such insurance as is provided by this policy for the rentee shall not apply to any loss with respect to which the rentee has other valid and collectible coverage. It is further agreed that in any event, the limit of the Company's liability to the rentee shall not exceed the applicable minimum limit of liability specified in the financial responsibility laws of the state in which the vehicle is principally garaged." It is contended that that provision in the policy is valid by reason of the language of subdivision (f) of section 11580.1 of the Insurance Code. As of the dates herein involved, that subdivision read as follows: ". . . such policies may contain a provision that the insurance coverage applicable to such motor vehicles afforded a person other than the named insured or his agent or employee shall not be applicable if there is any other valid and collectible insurance applicable to the same loss covering such person as a named insured or as an agent or employee of a named insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code; and in such event, the two or more policies shall not be construed as providing cumulative or concurrent coverage and only that policy which covers the liability of such person as a named insured, or as an agent or employee of a named insured, shall apply. In the event there is no such other valid and collectible insurance, the coverage afforded a person other than the named insured, his agent or employee, may be limited to the financial responsibility requirements specified in Section 16059 of the Vehicle Code."

It must be noticed that the policy provision is, in one respect, broader than the statutory provision and, in another respect, narrower than the statute would have permitted.

The escape clause in the policy purports to apply to all losses as to which the rentee has "other valid and collectible insurance," whereas the statute permits such a clause only as to losses as to which there is insurance which is not only "valid and collectible," but which covers the additional insured "as a named insured or as an agent or employee of a named insured." As we shall see, although Valentine had coverage under the Travelers policy, he was not a "named" insured thereunder. It follows that, since Valentine was the "named insured" under the Mid-Century policy, the Stuyve-

sant policy did not provide coverage for him for such part of the Torres' judgment as was covered by the Mid-Century policy—*i.e.*, $10,000. But, since Valentine was not a "named insured" under the Travelers policy, Stuyvesant's policy did provide coverage for him beyond the protection afforded by Mid-Century—*i.e.*, Valentine had coverage with Stuyvesant for the second $10,000 of the $20,000 judgment against him.

On the other hand, as we have said, the escape clause in the Stuyvesant policy does not go as far in another direction as the statute would have permitted. For reasons known to it, the company elected to limit its liability to persons other than the named insured only where that person was the "rentee." Since neither Soledad nor Incarnacion were rentees of the motorcycle, it follows that Stuyvesant's coverage as to them went to the full $300,000 limit of its policy, as did its coverage to Galbraith's, and nothing in the quoted policy provision operates to relieve Stuyvesant from liability for the portions of the judgment against those three judgment debtors of Torres, if those portions of the judgment should become effective.

## III

■ We turn, next, to the question of whether or not the Travelers policy gave coverage to any of the judgment debtors. Its policy, with a limit of $10,000 for injury to one person, insured Soledad and two described automobiles owned by him. The company has stipulated that its protection (whatever it was) extended also to Incarnacion as a named insured.

Travelers first makes the same contention as does Mid-Century, namely that, since the policy refers only to "automobiles," it afforded no coverage at all with respect to a motorcycle. For the reasons above set forth, we reject that argument.

Travelers next calls attention to an endorsement making the policy not applicable "while the automobile is being operated by . . . Valentine Hernandez," and argues that that provision defeats coverage. While the statute (subd. (e) of Ins. Code, § 11580.1) permits a clause excluding named persons from the coverage otherwise extended, we think that the language here used did not operate to exclude coverage for, nor as to, Valentine except where he was operating one of the two automobiles expressly described in the policy. We are enjoined by many cases, among them *Gray* v. *Zurich Ins. Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], that

848

policy provisions must be read in the light of the "reasonable expectations" of the insured. Two factors lead us to the conclusion stated. In the first place, the draftsman, in dealing with a policy which, by its express terms, applied not only to described automobiles but to an indefinite number of non-owned automobiles, elected to use, in this provision, the restrictive word "the automobile" and not the general term "an automobile." In the second place, although public policy compels the insurance company to provide coverage for motorcycles as well as for automobiles, that requirement exists whatever Soledad Hernandez thought and even if he did not realize that he was getting the wider protection. But the construction of the clause at issue is a matter of construing a contract. Soledad hardly could be expected to understand that the special endorsement applied to a vehicle that he did not know was covered by the policy. It follows that the attempted special exclusion of Valentine is not applicable and that, if Valentine is otherwise covered under the Travelers policy, the quoted endorsement does not operate to relieve Travelers from a coverage as to Valentine, up to the $10,000 extent of its policy. We understood Travelers' counsel to concede as much at oral argument.

Travelers agreed, in Part I of its policy, "To pay on behalf of the insured all sums which the insured shall become legally liable to pay. . . ." With respect to a nonowned automobile, the policy defines the word "insured" as including both the named insured (here Soledad and Incarnacion) and "any relative, but only with respect to a private passenger automobile or trailer" and it defines the word "relative" as meaning "a relative of the named insured who is a resident of the same household." It was stipulated that Valentine was such a resident.

Travelers contends that, even if the word "automobile" must, for reasons above discussed, be read as including "motorcycle" in any clause relating to the described automobiles or relating to the named insured, the law does not require such an extension in a clause relating only to a nonowned and undescribed automobile driven by an unnamed insured. It relies on the language of section 16452 of the Vehicle Code, which, so far as here pertinent, reads as follows: "An operator's policy of motor vehicle liability insurance shall insure the person named as insured therein against loss from the liability imposed on him by law for damages arising out of use by him of any motor vehicle not owned by

him, . . . within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance."

It is true, as Travelers argues, that the law of California does not require an insurance company to issue a policy covering persons other than the named insured except as they are permissive users of a described and owned motor vehicle. But if, for its own reasons, an insurance company elects to issue a policy that provides "motor vehicle" liability insurance to someone described therein by class rather than by name, and in so doing describes the members of that class as "insured," then the public policy expressed in the statutes and in the cases construing those statutes comes into play. That policy, as we have said above, requires that, if an operator is to be insured at all, he must be insured wherever and for whatever motor vehicle he drives. By expressly designating Soledad's relatives residing in his household as being "insured," the Travelers policy necessarily provided coverage for Valentine no matter what kind of nonowned motor vehicle he drove.

## IV

We turn now to consider in what order of priority the three policies, each of which provides coverage for Valentine, are liable to pay the $20,000 judgment against him.

We have quoted above the escape clause in the Stuyvesant policy. The statute (subd. (f) of Ins. Code, § 11580.1) provides as follows: ". . . the two or more policies shall not be construed as providing cumulative or concurrent coverage and only that policy which covers the liability of such person as a named insured, or as an agent or employee of a named insured, shall apply." The Mid-Century and the Travelers policies each contain a so-called "excess liability" clause. So far as is herein pertinent the clause in the Mid-Century policy reads as follows: "With respect to a substitute or non-owned automobile, Coverages A . . . shall be excess insurance over any other collectible insurance of any kind available to the insured irrespective of whether such other insurance was obtained by a person other than the named insured." The clause in the Travelers policy reads as follows: ". . . the insurance with respect to a temporary substitute or non-owned automobile shall be excess over any other valid and collectible insurance."

For the reasons we have discussed above in considering the escape clause in the Stuyvesant policy, that policy did not

provide coverage "available" to Valentine for any liability covered by the Mid-Century policy. As between Mid-Century and Stuyvesant, therefore, Mid-Century had a primary liability to the extent of its policy limits—*i.e.*, it is liable for the first $10,000 of the judgment against Valentine.

As between Stuyvesant and Travelers, however, a different result follows. Were it not for the escape clause, the Stuyvesant policy would have provided coverage for Valentine (as the rentee of an owned motor vehicle) to the full $300,000 limit of that policy. It is only by reason of the escape clause and the statute permitting such a clause, that Stuyvesant becomes subordinate in liability to Mid-Century. But, as we point out above, the escape clause in the policy does not come into operation at all insofar as the Travelers policy is concerned. As between Stuyvesant and Travelers, the Stuyvesant policy is "valid and collectible" insurance entitling Travelers to rely on its excess clause and to take third place in the order of liability.

Were the present proceeding concerned only with the Mid-Century and Travelers policies, then, under well-settled law, the two "excess" clauses would have cancelled out and each company would have been liable, pro rata, to pay the judgment against Valentine. However, since that judgment is for $20,000, the actual result would have been that each company would have paid its full policy limit. Since Mid-Century is liable for its policy limit, and for no more than that limit, under any valid theory of priority, it is of no consequence to it whether the remainder of the judgment is paid by Stuyvesant or by Travelers. That final payment concerns only the latter two companies and, as between them, Travelers' liability is subordinate to that of Stuyvesant.

## V

The judgment imposed on Stuyvesant the full cost of defense of the Torres' action not only insofar as a defense was provided for Galbraith's but also for the costs of defense of the three Hernandez. The principles above discussed necessarily require a revision of that portion of the judgment.

## VI

As we have said above, it is unnecessary, in this case, to determine the problems of coverage or of order of liability in connection with the judgments against Galbraith's and against Soledad and Incarnacion. For the reasons set out by us in *American Motorists Ins. Co.* v. *Underwriters at Lloyd's*

*London* (1964) 224 Cal.App.2d 81 [36 Cal.Rptr. 297], and to avoid circuity of action, the insurance providing coverage for Valentine should be resorted to first. It is nowhere suggested that any of the three companies involved are financially unable to pay their portion of the judgment against Valentine; such payment will satisfy not only the judgment against Valentine but the judgment against the other judgment debtors. It is only in the unlikely event that both Mid-Century and Travelers should become insolvent that any different result could follow; in that remote event, the principles above set forth would render the escape clause in the Stuyvesant policy inoperable and that company would become liable for the full $20,000.

The judgment is reversed; the case is remanded for further proceedings consistent with this opinion. Travelers shall recover its costs on appeal against Mid-Century and Stuyvesant and against them only. Mid-Century and Stuyvesant shall each bear its own costs on appeal.

Jefferson, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied September 15, 1969, and the petition of the plaintiff and appellant for a hearing by the Supreme Court was denied October 22, 1969.