[Civ. No. 1230. Fifth Dist., June 17, 1970.]

GREAT AMERICAN INSURANCE COMPANY et al., Plaintiffs, Cross-defendants and Respondents, v. GLOBE INDEMNITY COMPANY et al., Defendants and Appellants; P. R. FIELD et al., Defendants, Cross-complainants and Appellants; MILES BUNDY, a Minor, etc., et al., Defendants and Respondents.

942

---

## COUNSEL

Raymond & Noriega, Raymond, Noriega & Clifford and Cyril Viadro for Defendants and Appellants and for Defendants, Cross-complainants and Appellants.

Borton, Petrini, Conron, Wetteroth & Hitchcock, Bronson, Bronson & McKinnon and George H. Hartwick for Plaintiffs, Cross-defendants and Respondents.

Oscar F. Catalano, Robert R. Catalano and William B. Boone for Defendants and Respondents.

## OPINION

**GARGANO, J.**—Plaintiffs brought this action in the court below, seeking a declaration that the automobile liability insurance policy issued by defendant Globe Indemnity Company provides the primary coverage for plaintiff William Frye and his employer, Communication Enterprises, Inc., for any damages resulting from the automobile collision between Frye and defendant Linda Lee Bundy. For convenience, we shall hereafter refer to plaintiff Great American Insurance Company as Great American, to plaintiff Communication Enterprises, Inc. as Enterprises, to defendant Globe Indemnity Company as Globe, and to defendant Field & Gooch partnership as Field & Gooch.

The facts are substantially as follows:

Thomas Poor is the owner of Kern Radio Dispatch, which sells and leases two-way radio systems to its customers. Mr. Poor is also the president and majority stockholder of Enterprises, and his radio systems are installed, maintained and repaired by that company.

On July 5, 1966, Philip R. Field, on behalf of Field & Gooch, leased a two-way radio system from Kern Radio Dispatch at the monthly rental of $52.25; the rental fee included the cost of maintenance and repair work. The system was installed in the partnership's 1966 Ford Ranchero by Enterprises.

On August 2, 1967, Mr. Field drove the Ford Ranchero to Enterprises' service shop to have the receiver of the radio unit checked out, but he did not want to wait while the unit was being serviced. At the service manager's request, William Frye, an employee of Enterprises, accompanied the customer home in the Ranchero. As Frye was returning the automobile to the service shop, he collided with a vehicle driven by Linda Lee Bundy. The collision resulted in severe head and brain injuries to Miles Bundy, who was then 3½ months old.

At the time of the accident Field & Gooch was the named insured in an automobile liability insurance policy issued by Globe; this policy covers the permissive users of Field & Gooch's automobiles but excludes "any person while employed in or otherwise engaged in duties in connection with an automobile business if there is other valid and collectible insurance therefor available to such person either as a named insured or as an agent or employee of a named insured under a policy with limits at least equal to the requirements of the applicable Financial Responsibility Law." The policy defines an automobile business as the business or occupation of "selling, repairing, servicing, storing or parking automobiles."

Following the accident an action for damages was brought on behalf of Miles Bundy in the Superior Court of Kern County against Enterprises, William Frye and Field & Gooch. A similar action against the same defendants was brought by Mrs. Bundy in the Municipal Court of the Bakersfield Judicial District. Then, Great American demanded that Globe assume the defense of William Frye and Enterprises, asserting that they were covered by the Globe policy. Great American had issued a comprehensive public liability policy to Enterprises, covering the company for any liability arising from the operation of its business. This policy also covered the company's employees for any liability arising from the operation of company-owned automobiles on company business. However, the policy did not expressly cover Enterprises' employees while operating vehicles not owned by the company.

At the conclusion of the trial, the court inter alia found that at the time of the accident Frye was a permissive user of the Ranchero automobile, that Enterprises was not engaged in servicing automobiles within the meaning of subdivision (f) of Insurance Code section 11580.1, that Frye was not employed in or otherwise engaged in duties in connection with an automobile business within the ambit of the Globe exclusion, that Frye was not covered by the Great American insurance policy as the named insured or as an employee of the named insured, and that Frye was a special agent and special employee of Field & Gooch. Judgment was entered accordingly, and Globe and Field & Gooch have appealed.

It is settled that the public policy of this state, presently embodied in the omnibus clause of section 11580.1 of the Insurance Code, broadens automobile insurance coverage to protect unknown innocent persons who may be injured by the negligence of drivers operating automobiles with the owners' consent. (*Wildman* v. *Government Emp. Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359]; *Interinsurance Exchange of Auto. Club* v. *Ohio Cas. Ins. Co.*, 58 Cal.2d 142 [23 Cal.Rptr. 592, 373 P.2d 640].) Stated in a slightly different manner, the basic public policy articulated in Insurance Code section 11580.1 requires an automobile liability insurance policy to cover the permissive users of the named insured's automobiles within the full limits of the policy unless they are natural persons and are excluded by name. The only other exception is delineated in subdivision (f). The subdivision provides: "Where two or more policies are applicable to the same loss and one of such policies affords coverage to a named insured engaged in selling, repairing, servicing, delivering, testing, road testing, parking, or storing automobiles, such policies may contain a provision that the insurance coverage applicable to such motor vehicles afforded a person other than the named insured or his agent or employee shall not be applicable if there is any other valid and collectible insurance applicable to the same

loss covering such person as a named insured or as an agent or employee of a named insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code; . . . In the event there is no such other valid and collectible insurance, the coverage afforded a person other than the named insured, his agent or employee, may be limited to the financial responsibility requirements specified in Section 16059 of the Vehicle Code."

Thus, even if it is assumed that both the Great American and Globe policies are applicable to the same loss (the Frye-Bundy accident), the Globe exclusion of permissive users of its named insured's automobiles is effective under subdivision (f), only if Frye's employer, Enterprises, was engaged in one of the excludable activities mentioned in the subdivision. And, because it is clear that at the time of the accident Enterprises was not engaged in selling, repairing, delivering, testing, road testing, parking or storing automobiles, a crucial question is whether it was engaged in "servicing automobiles" within the ambit of the subdivision. If at the time of the accident Enterprises was not engaged in one of the activities mentioned in subdivision (f) of section 11580.1, Globe's policy provides primary coverage to Frye, as the permissive user of the Field & Gooch Ford Ranchero, regardless of the language of the exclusion. █ It is fundamental that an insurance company cannot broaden the permissive user exclusion beyond the limits of the statute and that a policy purporting to do so is ineffective to that extent (*Mid-Century Ins. Co.* v. *Hernandez,* 275 Cal.App.2d 839 [80 Cal.Rptr. 448]).

█ Manifestly, subdivision (f) does not open the door to the indiscriminate exclusion of permissive users of the named insured's automobiles merely because their work or business brings them into contact with automobiles, no matter how incidental that contact may be. The subdivision seemingly recognizes the fact that in a mechanized age certain automobile services are essential and that in performing or procuring these services the owner of the vehicle does not have a choice of drivers, from a practical standpoint. In other words, it is reasonably evident that the term "servicing" does not have the sweeping meaning contested for by appellants, but, rather, is limited to the servicing of automobiles in the conventional sense. Accordingly, we believe that the term must be strictly construed to refer only to services performed on, or for the benefit of automobiles, and does not include services which are unrelated to the automobile business and which do not require the use or retention of the automobile to perform, and in which the contact with the vehicle is purely incidental. While we stated in *National Emblem Ins. Co.* v. *Rios,* 275 Cal.App.2d 70 [79 Cal.Rptr.

583], that the Legislature, by legislative fiat, may modify the policy articulated in *Wildman* v. *Government Emp. Ins. Co., supra,* legislative enactments purporting to do so must be strictly construed (*Abbott* v. *Interinsurance Exchance of Auto. Club,* 260 Cal.App.2d 528 [67 Cal.Rptr. 220]).

 We conclude that the trial court's finding on this crucial issue is supported by substantial evidence (*Utica Mut. Ins. Co.* v. *Monarch Ins. Co.,* 250 Cal.App.2d 538, 542 [58 Cal.Rptr. 639]). The two-way radio systems which Thomas Poor sells and leases are not installed and used only in vehicles; they are also installed and used in buildings and can be carried on the person. Moreover, even when installed in automobiles, the systems do not become an integral part of the automobile. In most instances they are merely attached by a bolt and screw to prevent movement, and are quickly and easily removed from the vehicle for servicing. In other instances, they are placed on the car seat and operated on a separate battery. Consequently, Enterprises was, in reality, engaged in installing, servicing and repairing its majority stockholder's two-way radio equipment, and its contact with automobiles was purely incidental.

We note parenthetically that the Globe policy itself subtly distinguishes between the servicing of automobiles in the conventional sense and services which are unrelated to the automobile business, and in which the contact with the vehicle is entirely incidental. Albeit the exclusion refers to "selling, repairing, servicing, storing or parking automobiles," it categorizes each activity as "an automobile business." It taxes the imagination to believe that Enterprises was engaged in an automobile business in any sense of the word. And, while we have not uncovered a California decision directly in point, the judicial decisions of our sister states are opposite to appellants' contention. For example, in *Chavers* v. *St. Paul Fire & Marine Ins. Co.,* 188 F.Supp. 39, a restaurant owner's customer was injured by a parking lot attendant who was parking the customer's vehicle. The parking lot was adjacent to the restaurant and was used for the accommodation of the restaurant's patrons. The insurance company denied coverage because its policy contained an automobile business exclusion essentially similar to that contained in the Globe policy; it defined an automobile business as "the business of selling, repairing, servicing, storing or parking of automobiles." The court held that the operation of the parking lot did not come within the "automobile business" exclusion because it was merely an incident to the restaurant business.[1]

We also note that at the time of the accident William Frye was delivering

---

[1]See also *Bituminous Cas. Corp.* v. *American Fid. & Cas. Co.,* 22 Ill.App.2d 26 [159 N.E.2d 7]; *Arditi* v. *Massachusetts Bonding & Ins. Co.* (Mo.) 315 S.W.2d 736; *Tolsma* v. *Miller,* 243 Wis. 19 [9 N.W.2d 111].)

the Ford Ranchero automobile from Mr. Field's home to Enterprises' work shop, and that "an automobile business" as defined in the Globe policy does not embrace the delivering of automobiles. ■ It is the rule that insurance policies are construed in favor of coverage, and that any ambiguity or uncertainty is to be resolved against the insurer (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914]). ■ It is also the rule that if an insurer desires to create an exception to the principal coverage clauses, the burden rests upon it to phrase the exception in clear and unmistakable language (*Osborne* v. *Security Ins. Co.,* 155 Cal.App.2d 201, 207 [318 P.2d 94]).

■ Appellants assert that in returning the assured automobile from Field's home to the work shop, Frye was engaged in a duty connected with an excluded automobile business, and that he came within the Globe exclusion even though Globe's definition of "an automobile business" does not embrace the business of delivering automobiles.

For the reasons we have already given, appellants' assertion that Frye was engaged in a duty connected with an excluded business erroneously assumes that Enterprises was engaged in the business of servicing automobiles. But, of greater importance, their assertion also assumes that Enterprises customarily delivered the customers' automobiles as an incident to its two-way radio maintenance service. This assumption ignores the evidence. Mr. Poor testified that Enterprises did not customarily deliver the customers' automobiles, seldom did it, and discouraged the practice. In addition, Frye was employed as an installer, and he was asked by his service manager to accompany Mr. Field home and return with the vehicle as an accommodation to the customer.

■ In any event, the court's judgment must be affirmed for still another reason. Even if we should assume that Enterprises was servicing automobiles within the ambit of subdivision (f), section 11580.1, or was engaged in "an automobile business" within the Globe exclusion, Globe cannot prevail in this appeal. William Frye was not covered by the Great American policy as a named insured or as the employee of the named insured. The Great American policy is a comprehensive public liability policy covering Enterprises for any liability arising from the operation of its business, including any liability arising under the doctrine of *respondeat superior.* However, while the policy expressly provides coverage for the company's employees when operating Enterprises' automobiles, it affords no such coverage to employees when they are operating non-owned automobiles. And, apparently to forestall innumerable disputes as to whether a permissive user is in fact covered by other insurance, subdivision (f) allows the total exclusion of a permissive user only if he is covered by

other valid and collectible insurance "as a named insured or as an agent or employee of a named insured." (*Mid-Century Ins. Co.* v. *Hernandez, supra,* 275 Cal.App.2d 839.)

In rebuttal, appellants argue that Great American admitted coverage of Frye in its complaint for declaratory relief. At best, the complaint is ambiguous in this respect and does not expressly admit that Frye was covered under the Great American policy "as a named insured or as an agent or employee of a named insured." And, because appellants did not raise the point in the court below or object to the court's finding in favor of respondents on this ground, they cannot raise the issue for the first time on appeal. Furthermore, section 11580.1 protects the innocent third party, and respondents Bundy made no such admission.

Appellants contend that even if it is conceded that Globe's policy provides the primary coverage for the Frye-Bundy accident, Globe's maximum exposure under the policy does not exceed the limits of the financial responsibility requirements specified in section 16059 of the Vehicle Code. This contention is devoid of merit and is hardly worth mentioning. Admittedly, the last sentence of subdivision (f) of section 11580.1 allows an insurance company to limit its exposure to the financial responsibility requirements specified in Vehicle Code section 16059 in cases where the permissive user is not covered by other valid and collectible insurance "as a named insured or as an agent or employee of a named insured." But, as in the case of outright exclusion, the limitation of exposure is subject to the other conditions set forth in subdivision (f) relating to the automobile activities mentioned therein.

We do not reach the question as to whether William Frye was a special agent and special employee of Field & Gooch at the time of the Frye-Bundy accident.

The judgment is affirmed.

Stone, P. J., and Coakley, J., concurred.

The petition of all the appellants for a hearing by the Supreme Court was denied August 12, 1970.