[No. B017288. Second Dist., Div. One. June 27, 1986.]

RALPH ROUG, Plaintiff and Appellant, v.
OHIO SECURITY INSURANCE COMPANY,
Defendant and Respondent.

**COUNSEL**

Jerold L. Bloom for Plaintiff and Appellant.

Hampton, Wilson & Earle and Terence M. Kelly for Defendant and Respondent.

**OPINION**

**HANSON (Thaxton), J.—**

INTRODUCTION

Plaintiff Ralph Roug (Plaintiff and/or Roug), who filed a "Complaint for Declaratory Relief" seeking uninsured motorist coverage from defendant Ohio Security Insurance Company (Ohio), appeals from a judgment by the trial court (Hon. Richard A. Lavine, judge presiding) in favor of defendant Ohio. We affirm.

FACTS

The following facts are undisputed: *On July 8, 1982,* plaintiff Roug purchased an automobile insurance policy (No. DBS 072 2900) from de-

fendant Ohio covering his 1968 Chevrolet Impala automobile. The policy issued included the basic policy and an uninsured motorist indorsement. The original policy of insurance expired on September 16, 1982, was renewed, and then expired on March 16, 1983. The premium paid for the policy was $171.

*Sometime between July 17 and 19, 1982,* the battery was stolen from Plaintiff's Chevrolet Impala automobile. While Plaintiff's automobile was inoperative due to the stolen battery, commencing on July 20, 1982, Plaintiff used a 1970 Honda motorcycle which he also owned and had purchased prior to the accident.

*On October 27, 1982,* while Ohio's insurance policy was in full force and effect, Plaintiff, while riding his Honda motorcycle, was struck and injured by uninsured motorist Eric Daza, driving a Dodge Dart automobile.

Plaintiff Roug submitted a claim to defendant Ohio for insurance coverage under the uninsured motorist provision of his automobile policy. Ohio denied the claim. This litigation ensued.

At the trial, Plaintiff testified that he rode his Honda motorcycle regularly during the approximately three-month period between the battery theft and the accident because he could not afford $50 for a new battery or even less for a used one. He nonetheless paid premiums to Ohio for insurance coverage on his Chevrolet Impala and paid all his monthly bills. Plaintiff also testified that prior to the theft of his battery, he did not use his Honda motorcycle as a street vehicle but only as an off-road recreational vehicle.

### The Basic Policy and Uninsured Motorist Indorsement

The basic policy issued to Plaintiff, in relevant part, states under "Insurance Agreements" [in bold type caption letters] "IV Automobile Defined" [bold type], "the word 'automobile' means: (1) Described Automobile [bold type]—the motor vehicle or trailer described in this policy" . . . (3) "Temporary Substitute Automobile [bold type]—under coverages A, B and division 1 of coverage C, an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

The uninsured motorist indorsement provides in pertinent part: The "Insuring Agreements" [capital letters, bold type] indorsement concerning

"1. Damages for Bodily Injury Caused by Uninsured Automobiles" [bold type] under "11. Definitions" [bold type] states:

"(b) 'Insured automobile' means an automobile:

"(1) described in the schedule as an insured automobile to which the bodily injury liability coverage of the policy applies;

"(2) while temporarily used as a substitute for an insured automobile as described in subparagraph (1) above, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

"(3) while being operated by a named insured or by his spouse if a resident of the same household; but the term 'insured automobile' shall not include:

"(i) an automobile while used as a public or livery conveyance;

"(ii) an automobile while being used without the permission of the owner;

"(iii) under subparagraphs (2) and (3) above, an automobile owned by the principal named insured or by any named insured designated in the schedule or by any resident of the same household as such insured; or

"(iv) under subparagraphs (2) and (3) above, an automobile furnished for the regular use of the principal named insured or any resident of the same household."

## ISSUE

On appeal, Plaintiff contends that a reversal is mandated because the Honda motorcycle he was riding at the time of the accident was insured as a "temporary substitute" for an "insured automobile" that was withdrawn from normal use because of its breakdown, repair, servicing, or loss or destruction.

Defendant Ohio argues that Plaintiff's Honda motorcycle was not an "insured automobile" under the terms of the policy nor was it a "temporary substitute" for the Chevrolet Impala within the meaning of the policy.

## DISCUSSION

■ *Was the 1970 Honda motorcycle which Plaintiff was riding at the time of the accident an "insured automobile" within the meaning of the basic insurance policy? N.*

"An insurance policy is but a contract; and, like all other contracts it must be construed from the language used; when the terms are plain and unambiguous, it is the duty of courts to enforce the agreement. (*Farmers Ins. Exch.* v. *Harmon* [(1974)] 42 Cal.App.3d 805, 809 [117 Cal.Rptr. 117].)" (*State Farm Mut. Auto Ins. Co.* v. *Herron* (1977) 71 Cal.App.3d 673, 677 [139 Cal.Rptr. 575].)

In the case at bench, we perceive no ambiguity in the language of the contract of insurance which in plain, clear and conspicuous language sets forth the agreement of the parties.

In *Harrison* v. *California State Auto. Assn. Inter-Ins. Bureau* (1976) 56 Cal.App.3d 657 [128 Cal.Rptr. 514], an insured, who was injured in a collision with an uninsured motorist while driving a motorcycle he owned, filed a petition against two insurers to compel arbitration. One insurer, who had issued a policy covering a pickup truck owned by the insured, defended on the ground that the insured's injuries occurred while he was operating a motorcycle and consequently were not covered by the uninsured motorist coverage on the pickup truck. The other insurer, who had issued the policy covering the motorcycle, defended on the ground that the insured had waived uninsured motorist coverage. The trial court denied the petition.

On appeal, the court affirmed after holding that the trial court had jurisdiction to determine whether the insurer had a duty to arbitrate the controversy. The court held that under the policy covering the pickup truck, the motorcycle was not an "insured motor vehicle." Consequently, that insurer was not liable under the uninsured motorist provision. Under the policy covering the motorcycle, the court observed that the policy contained an indorsement excluding uninsured motorist coverage, and a cover sheet stating that the insured was "not covered" by uninsured motorist coverage. The court therefore held, first, that there was no requirement that either the indorsement or the cover sheet be signed by the insurer, and second, that the trial court correctly determined, as a question of law, that the policy excluded uninsured motorist coverage.

In *Harrison* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 56 Cal.App.3d 657, although the threshold question was whether the issues presented were the subject of arbitration or matters to be determined by the

court, the court said at page 663: "In the instant case plaintiff was occupying and driving a motorcycle owned by him when he was injured in a collision with an automobile which was uninsured at the time of the accident. The motorcycle was not an insured motor vehicle under AAA's policy. The insured vehicle under its policy was a pickup truck. Accordingly, AAA's policy, both by its terms and consistent with the exemption authorized by section 11580.2, precluded liability to plaintiff when he sustained injuries while occupying a motorcycle owned by him which was not an 'insured motor vehicle.'"

In the case at bench, as in *Harrison,* we hold that Plaintiff's Honda motorcycle is not an insured motor vehicle under Ohio's policy of insurance.

Here, it is undisputed that the basic policy covered Plaintiff's *automobile* (Chevrolet Impala), and did not list the 1970 Honda motorcycle as an insured vehicle. Moreover, Plaintiff paid no consideration by way of a premium to cover the risk of operating the motorcycle.

*Was the 1970 Honda motorcycle which Plaintiff was riding at the time of the accident a "Temporary Substitute" for the Chevrolet Impala within the meaning of the contract of insurance? N.*

■ Plaintiff argues that uninsured motorist coverage should be extended under the "temporary substitute" provision of the basic policy and the uninsured motorist indorsement.

In *Harrison v. California State Auto. Assn. Inter-Ins. Bureau, supra,* 56 Cal.App.3d 657, the court observed that plaintiff Harrison did not contend the motorcycle was a "temporary substitute" for which the policy provided liability coverage within the meaning of the term "insured motor vehicle" or defined in Insurance Code section 11580.2, subdivision (b). We address that issue here under the specific provisions of Ohio's policy of insurance and its uninsured motorist endorsement.

Here, according to the plain language of the basic policy and the uninsured motorist indorsement, an *automobile* means an *automobile* described in the schedule (Plaintiff's 1968 Chevrolet Impala), or an *automobile* temporarily used as a substitute while the insured's *automobile* listed in the schedule was withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

There is no ambiguity in the meaning of the terms "automobile" and "motorcycle." An automobile has four wheels[1] and a motorcycle has no

---

[1]Insurance Code section 11580.06, subdivision (d) defines "automobile" as ". . . any self-propelled motor vehicle, with neither more than nor less than four wheels, designed for use principally upon streets and highways. . . ."

more than three wheels.[2] The language of the policy clearly states an "insured automobile" means an *automobile* that is temporarily used as a substitute for an insured *automobile*. The definitions in the policy contain no ambiguities. Certainly an insurance policy is to be construed liberally in favor of an insured, especially as to the provision for a substitute vehicle. However, liberality of construction cannot serve to change a two wheel motorcycle into a four wheel automobile.

■ It is clear that an insurance company can limit the coverage of a policy issued by it, including uninsured motorist coverage, as long as such limitation conforms to the law, is not contrary to public policy, and does so in conspicuous, plain and clear language. (See *Hendricks* v. *Meritplan Ins. Co.* (1962) 205 Cal.App.2d 133, 137 [22 Cal.Rptr. 682]; *Lumberman's Mut. Cas. Co.* v. *Wyman* (1976) 64 Cal.App.3d 252, 259 [134 Cal.Rptr. 318].)

■ Moreover, in clear and plain language, the Ohio policy states that an insured automobile temporarily used as a substitute shall *not* include an automobile owned by the principal named insured. Under this limitation, Plaintiff is also excluded from coverage since it is undisputed that the Honda motorcycle was *owned* by Plaintiff and not described in the schedule. If this limitation was not stated in the policy, the insured could demand coverage for accidents involving other owned but uninsured automobiles for which no premium for coverage had been paid as consideration for an insurance carrier assuming the risk.

In *Interinsurance Exchange* v. *Velji* (1975) 44 Cal.App.3d 310 [118 Cal.Rptr. 596], the defendant was involved in an accident while riding in her husband's automobile, which was uninsured. The trial court entered judgment determining that her policy with plaintiff insurer afforded defendant automobile liability policyholder no uninsured motorist protection. On the date of the accident, the policyholder and her husband were residents of the same household, and the policy defined "named insured" to include a spouse so residing. Under "Exclusions," the policy stated that uninsured motorist coverage did not apply "to bodily injury to the insured while occupying a motor vehicle owned by an insured, unless the occupied vehicle is an insured motor vehicle." Since the husband's car was uninsured, the trial court found that there was no coverage for injuries caused by an uninsured motorist.

On appeal, the reviewing court in *Interinsurance Exchange* rejected the insured's argument that the exclusion was ambiguous, pointing out that it

---

[2]Vehicle Code section 400 defines "a motorcycle" in the following terms: "A 'motorcycle' is any motor vehicle other than a tractor having a seat or saddle for the use of the rider and designed to travel on not more than three wheels in contact with the ground. . . ."

was, with an immaterial exception, taken verbatim from the language of Insurance Code section 11580.2, subdivision (c)(6).

The appellate court in *Interinsurance Exchange, supra,* at pages 314 and 315, quoting from *Darrah* v. *California State Automobile Assn.* (1968) 259 Cal.App.2d 243, 246 [66 Cal.Rptr. 374], states: "[T]here can be no doubt of the right of the insurance companies to limit, in accordance with section 11580.2, the coverage of their policies, and when they have done so the plain language of the limitations must be respected. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* [(1956)] 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914]; *Hendricks* v. *Meritplan Ins. Co.,* 205 Cal.App.2d 133, 137 [22 Cal.Rptr. 682].) And when the terms of an insurance policy are plain and explicit, the court will indulge in no forced construction so as to cast unassumed liability on an insurance company. . . ."

As in *Interinsurance Exchange, supra,* in the case at bench, Plaintiff Roug was the policyholder, the named insured and his 1968 Chevrolet Impala automobile was the *only* vehicle listed in the schedule as covered by the policy and the uninsured motorist indorsement. Also, like *Interinsurance Exchange, supra,* the Ohio's uninsured motorist indorsement stated that the uninsured motorist coverage term "insured automobile" shall *not* include as a substitute automobile "an automobile owned by the principal named insured [Plaintiff herein] or any named insured designated in the schedule [Plaintiff herein] or by any resident of the same household as such insured." Thus, the policy's limitation of its coverage contained no ambiguity, and operated to exclude plaintiff from coverage.[3]

Nor does the language in the uninsured motorist statute [section 11580.2], in view of its purpose, compel a different result. Ohio clearly never intended to insure any motorcycle under the policy issued to Plaintiff herein. The policy repeatedly uses the word "automobile" (here the Chevrolet Impala) throughout. Common knowledge indicates that although an automobile and

---

[3]This conclusion appears consistent with *Mid-Century Ins. Co.* v. *Hernandez* (1969) 275 Cal.App.2d 839 [80 Cal.Rptr. 448]. That opinion stated the rule, citing several Insurance and Vehicle Code sections and *Wildman* v. *Government Emp. Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359], that "[a]ny owner's motor vehicle liability policy governed by California law must provide coverage for the vehicle therein described no matter who operates it, so long as that operation is within the continental United States and with the consent of the named insured, unless, by an endorsement conforming to subdivision (e) of the Insurance Code section 11580.1, some particular person is expressly excluded. Any operator's policy must provide coverage for the named insured for any nonowned motor vehicle that he operates, whether therein described or not . . . ." However, the opinion states that this policy "is concerned with affording insurance protection to injured third parties by making sure that the tortfeasors are insured to a statutorily fixed limit. That policy does not extend to a requirement that the operator of a motor vehicle be covered by insurance for his own injuries." (*Mid-Century Ins. Co.* v. *Hernandez, supra,* 275 Cal.App.2d 839, 843-845.)

motorcycle may both be classified as vehicles, they are radically different animals of the species, with quite different designs, capabilities, benefits, and risks. We have already noted the difference in the number of wheels (see fns. 1 and 2, *ante*). More pertinently, compared to automobile passengers, motorcycles afford their riders no protection in a collision. After requiring all motor vehicle insurance policies to contain a provision with coverage limits at least equal to specified requirements for recovery of damages from uninsured motorist, Insurance Code section 11580.2, subdivision (a)(1) states that "[t]he insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, in the form specified in paragraph (2), delete the provision covering damage caused by an uninsured motor vehicle (1) completely, or (2) delete such coverage when a motor vehicle is operated by a natural person or persons designated by name, or agree to provide such coverage in an amount less than that required by subdivision (m) but not less than the financial responsibility requirements specified in Section 16056 of the Vehicle Code." (See also *Lumberman's Mut. Cas. Co.* v. *Wyman, supra,* 64 Cal.App.3d 252, 255.) Motorcycles are much smaller than automobiles, and other motorists find them much more difficult to see. These factors increase the risk of collision, and the severity of resulting injuries. This increased risk in turn necessarily affects premiums charged by insurance companies as consideration for supplying coverage.

Since plaintiff Roug owned the Honda motorcycle, he paid no premium for coverage, and his policy did not list the motorcycle as an insured vehicle, the exclusion applies to preclude coverage. The basic purpose of the exclusionary clause of section 11580.2 has been discussed as follows: "This exemption prevents the coverage of one policy from extending to accidents involving other owned but uninsured vehicles, and reflects the theory that each motor vehicle should carry its own liability insurance and uninsured motorist coverage." (Cal. Uninsured Motorist Practice (Cont.Ed.Bar 1973) § 1.45, p. 33.)

Ohio's policy, as we have discussed, repeatedly refers to an *automobile*. It would be absurd to allow Plaintiff to recover, thus allowing him a "free ride" on his owned and uninsured Honda motorcycle which prior to the accident he used off road. Furthermore, it is extremely doubtful, in light of the clear language of the policy, that any layman or plaintiff Roug himself would reasonably expect coverage under the circumstances of this case.

Also without merit is plaintiff Roug's argument that coverage is afforded by the single sentence of the "uninsured motorists coverage amendment" which states: "It is agreed that the term 'uninsured automobile' is changed to 'uninsured motor vehicle.'" This unambiguous language clearly refers

to the uninsured motor vehicle that collides with the assured's (here Plaintiff's) automobile. The statement has no meaning in terms of the "insured automobile" already discussed.

Finally, Plaintiff asserts that the trial court abused its discretion in making the factual finding that he failed to meet his burden of proof in showing that his 1970 Honda motorcycle was being used as a "temporary" substitute.

The trial court's judgment made a factual finding that Plaintiff failed to meet his burden of proof in showing that he used his 1970 Honda motorcycle as a "temporary" substitute. This finding was based on Plaintiff's testimony that before his battery was stolen from his insured Chevrolet Impala automobile, he purchased the 1970 Honda motorcycle. During the approximately three-month period between the date the battery was stolen and the date of the accident, he (Plaintiff) rode the Honda motorcycle on a regular basis, but did not have the motorcycle insured, choosing instead to pay premiums to Ohio for insurance coverage on his Chevrolet Impala. Plaintiff further testified that he was able to pay his monthly bills, yet could not afford $50 for a new battery or even less for a used one.

■ It is elementary that where the trial court has discretionary power to decide an issue, a reviewing court will not disturb the exercise of a trial court's discretion. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; *Mission Imports, Inc.* v. *Superior Court* (1982) 31 Cal.3d 921, 932 [184 Cal.Rptr. 296, 647 P.2d 1075].) The appellate court defers to the factual findings of the lower court and presumes them to be correct, unless completely unsupported by substantial evidence. The appellate court functions by reviewing legal conclusions independently, but ordinarily does not disturb a trial court's findings of fact. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121].) ■ We cannot say, in view of Plaintiff's own testimony, that the trial court abused its discretion by finding that Plaintiff had not met his burden of proof in this respect.

In sum, we hold as a matter of law that the defendant Ohio's policy of insurance does not afford uninsured motorist coverage to Plaintiff. We further conclude that the trial court did not abuse its discretion by its factual finding that the Plaintiff failed to meet his burden of proof that the Honda motorcycle he was riding at the time of the accident was "temporarily" being used as a substitute.

## DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Epstein, J.,* concurred.

A petition for a rehearing was denied July 24, 1986, and appellant's petition for review by the Supreme Court was denied September 10, 1986.

---

*Assigned by the Chairperson of the Judicial Council.