[No. B002881. Second Dist., Div. Seven. Sept. 27, 1984.]

INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA, Plaintiff and Respondent, v. BOANERGE ANTONIO GARCIA et al., Defendants and Appellants.

420

**COUNSEL**

Edwin M. Rosenberg, Victoria O'Hara and Rodolfo A. Aguirre for Defendants and Appellants.

Collins & Collins, Harold Q. Longenecker and John R. Dangl, Jr., for Plaintiff and Respondent.

OPINION

**JOHNSON, Acting P. J.**—This appeal raises an issue of first impression. Is an uninsured motorist insurer liable for injuries its policyholders sustain when struck by a vehicle owned by a self-insurer who becomes insolvent more than one year after the accident. We conclude it is, at least where the self-insurer has been adjudicated to be insolvent. Accordingly, we reverse a declaratory judgment entered in favor of the uninsured motorist carrier in this case.

I. *Facts and Proceedings Below*

The essential facts are not in dispute. On December 23, 1978, Boanerge, Piedad and Antonio Garcia (the Garcias) were injured in an automobile accident with a taxicab owned and operated by Golden State Transit Corporation, a California corporation doing business as the Los Angeles Yellow Cab Company. At the time of the accident, Golden State did not carry any public liability insurance on its vehicles, but was "self-insured" pursuant to Vehicle Code sections 16052-16053. In March 1979, the Garcias filed a complaint for damages against Golden State. They elected to arbitrate these claims in August 1980. The arbitration was successful for the Garcias, awarding them damages of more than $20,000 on August 14, 1981.

However, apparently unbeknownst to the Garcias, an involuntary petition in bankruptcy had been filed against Golden State Transit on February 18, 1981. In that action Golden State was adjudged bankrupt and insolvent. Golden State then filed a notice of stay of actions and lien enforcement pursuant to United States Bankruptcy Code section 362 (11 U.S.C. § 362 (1978)), on March 11, 1981. It served notice of this stay on the Garcias five months later, on August 11, 1981. This was three days before the arbitration results became known.

The Garcias immediately requested a trial de novo to prevent entry of the arbitration award. This preserved their right to proceed under the uninsured motorist provisions of their own insurance policy issued by the Interinsurance Exchange of the Automobile Club of Southern California (Auto Club). Appellant Lilia Garcia is a named insured on the Auto Club policy. In December 1981, the Garcias elected to arbitrate their claims against the Auto Club. In response, the Auto Club propounded interrogatories which the Garcias duly answered; requested and received an independent medical examination of Piedad Garcia; and deposed appellants Boanerge, Piedad, and Antonio. Arbitration was scheduled, but postponed a number of times due to the unavailability of the assigned arbitrator. Arbitration was finally scheduled for September 15, 1982.

One month before the arbitration was to take place, the Auto Club informed the Garcias of its intention to file a declaratory relief action seeking to invoke the "insurer's solvency protection" of Insurance Code section 11580.2, subdivision (b)(2). It requested the arbitration hearing be taken off calendar, pending final resolution of the declaratory relief question. The Garcias acquiesced and on June 21, 1983, the trial court rendered judgment for the Auto Club, enjoining the Garcias from pursuing any uninsured motorist's coverage issued by the Auto Club. The Garcias appeal.[1]

II. *A Vehicle Whose Self-insured Owner Becomes Insolvent After an Accident Is an "Uninsured Motor Vehicle" Under the Insurance Code*

Insurance Code section 11580.2, subdivision (b)(2) states that "[a]s used in this section, the term 'uninsured motor vehicle' shall not include an automobile . . . [which is] self-insured within the meaning of the Safety Responsibility Law of the state in which the motor vehicle is registered . . . ." Although California has no "safety responsibility" law by popular name, it does have mandatory "financial responsibility" laws which require the driver and owner of every motor vehicle to demonstrate adequate financial responsibility. (Veh. Code, § 16020.) Inter alia, one may demonstrate financial responsibility through possession of a certificate of self-insurance issued pursuant to Vehicle Code sections 16052-16053. (Veh. Code, § 16021, subd. (a).)

The reason for this "self-insured vehicle" exemption is obvious. Otherwise in every instance where the driver or occupant of a vehicle with uninsured motorist coverage was injured by the operator of a self-insured vehicle, the injured parties would have an immediate action for uninsured motorist benefits against their own insurance carrier even if they could also recover from the self-insured motorist. Absent this self-insured vehicle ex-

---

[1]Although neither party alluded to the strict one-year statute of limitations placed on uninsured motorist actions by Insurance Code section 11580.2, subdivision (i), we note at the outset the Garcias' cause is not barred by the statute even though no action was taken against the Auto Club until some three years after the accident. In 1979, the statute provided in part that "[n]o cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section unless within one year from the date of the accident: (1) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction . . . ." (Ins. Code, § 11580.2, subd. (i)(1).) The statute was tolled by the suit filed by the Garcias for bodily injury against Yellow Cab on March 6, 1979, three months after the accident.

In 1983, however, the Legislature added a further condition to subsection (1), requiring the injured insured's uninsured motorist carrier be given notice that a suit was filed against a third party tortfeasor. We find the revised statute less than clear as to whether notice of the suit must be given to the carrier within the first year following the accident in order to toll the statute, or whether notice may be given at any time thereafter. Because the amendment is not applicable to the case at bar, we do not reach this question. We do, however, invite the Legislature to further clarify this new condition.

emption, uninsured motorist carriers would *always* be statutorily responsible for obligations which are properly those of self-insured tortfeasors. This exemption is designed to protect uninsured motorist carriers from shouldering the obligations of financially able self-insured tortfeasors.

However, when a self-insurer becomes insolvent and thus unable to satisfy an adverse judgment, the rationale behind the self-insured motorist exemption evaporates. The injured party no longer can recover from the formerly self-insured but currently insolvent tortfeasor. To simultaneously exempt insolvent self-insured from the statutory definition of "uninsured" vehicles would prevent the motoring public from spreading the risk of injury caused by such vehicles. Instead this approach would concentrate the risk on those, injured through no fault of their own, who are least able to bear it. In essence, the insolvent self-insured tortfeasor is exactly the type of problem the Legislature sought to address through the uninsured motorist provisions of our Insurance Code.

Consistent with this legislative purpose the Insurance Code only exempts those who are self-insured within the meaning of the relevant state safety responsibility laws. A self-insured tortfeasor who has been adjudicated bankrupt is no longer self-insured within the meaning of the California financial responsibility law because he no longer complies with the statutory requirement of continued ability to pay judgments obtained against him. (Veh. Code, § 16053, subd. (a).)[2] For purposes of uninsured motorist coverage it is not relevant whether the Department of Motor Vehicles has gotten around to cancelling the certificate of self-insurance. The bankrupt vehicle owner is no longer able to pay judgments, would not be eligible to be certified as self-insured and cannot be deemed to be self-insured for purposes of the statutory definitions of uninsured motorist vehicles in the Insurance Code. Thus, we hold that an insolvent self-insured tortfeasor who is subsequently adjudicated bankrupt is not self-insured within the meaning of Insurance Code section 11580.2, subdivision (b)(2); that Golden State's vehicles are therefore "uninsured motor vehicles" within the meaning of Insurance Code section 11580.2, subdivision (b); and that the Garcias are not barred from recovering from the Auto Club for their injuries.

The reasoning in *Katz v. American Motorist Ins. Co.* (1966) 244 Cal.App.2d 886 [53 Cal.Rptr. 669] helps to bolster our holding. In *Katz* the court held that a solvent liability insurer of a vehicle at the time of an accident who thereafter becomes insolvent " 'denies coverage' " to its in-

---

[2] "(a) The department may . . . issue a certificate of self-insurance when it is satisfied that the applicant . . . is possessed *and will continue* to be possessed of ability to pay judgments obtained against him . . . ." (Veh. Code, § 16053, subd. (a); italics added.)

sured within the meaning of Insurance Code section 11580.2, subdivision (b) and held such a vehicle to be statutorily "uninsured." (244 Cal.App.2d at p. 891.) In our view, a self-insurer who is adjudicated bankrupt is analogous to an insurance carrier who "denies coverage" to its insured. In both instances, the injured party has been hurt by an "uninsured motorist."

III. ▓ *The "Insurer's Solvency Protection" of Section 11580.2, subdivision (b)(2) Is Inapplicable in This Case*

The *Katz* court placed no time limitation on when an injured party could seek compensation from his or her own uninsured motorist carrier; indeed, the insolvency in *Katz* occurred almost two years after the date of the accident. (244 Cal.App.2d at pp. 887-888.) The *Katz* holding was codified in 1967 by the Legislature as the second paragraph of Insurance Code section 11580.2, subdivision (b)(2),[3] but with the additional one-year "insurer's solvency protection" limitation discussed above. Were Golden State insured by an insolvent public liability insurance carrier, any recovery by the Garcias from the Auto Club would be precluded by this one-year limitation. However, because *Katz* considered only insolvent commercial insurance carriers, the legislative codification of *Katz* was limited only to insolvent commercial carriers. The Legislature did not place a similar express limitation on insolvent self-insurers.

Nonetheless, respondent's principal contention on appeal is that as a conventional insurance carrier it is entitled to the "insurer's solvency protection" of Insurance Code section 11580.2, subdivision (b)(2) because Golden State's insolvency occurred more than a year after the date of the Garcias' accident.

The second paragraph of subdivision (b)(2) of the statute provides that "[a]s used in this section, the term 'uninsured motor vehicle' also means an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency. An insurer's solvency protection shall be applicable only to accidents occurring during a policy period in which its insured's motor vehicle coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within one year of the accident." (Ins. Code, § 11580.2, subd. (b)(2).) Our research has disclosed no California case construing this provision, nor has such a case been cited to us by the parties.[4] We disagree, however, with respondent's interpretation of the "insurer's solvency protection" clause and its applicability to this case.

---

[3]Eisler, California Uninsured Motorist Law Handbook (3d ed. 1979) section 4.14.

[4]Indeed, we have found no case in any jurisdiction which analyzes or applies the insurer's insolvency protection in the context of an insolvent self-insured. Useful background information on automobile liability self-insurance may be found in Comment, *Motor Vehicle Liability Self-Insurance: The Coverage Gap* (1979) 13 Loyola L.A. L.Rev. 205.

In *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 153 [23 Cal.Rptr. 592, 373 P.2d 640], the Supreme Court reiterated that "the *entire* automotive financial responsibility law must be liberally construed to foster its main objective of giving 'monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.'" citing *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914]. Our construction of the statute is thus guided by this objective.

The insurer's solvency protection only guarantees satisfaction where "the liability insurer of the tortfeasor" becomes insolvent within a year of the accident. Respondent argues that the designation "liability insurer" as used in section 11580.2, subdivision (b)(2) has not been defined. In support, respondent refers us to Insurance Code section 11580.9, subdivision (g), which at all relevant times provided that "[f]or purposes of this *section*, a certificate of self-insurance issued pursuant to Section 16053 of the Vehicle Code shall be considered a policy of automobile liability insurance." (Ins. Code, § 11580.9, subd. (g), italics added), and *Western Pioneer Insurance Co.* v. *Estate of Taira* (1982) 136 Cal.App.3d 174 [185 Cal.Rptr. 887]. However, in *Western Pioneer,* the court stated that by its own terms, the effect of section 11580.9, subdivision (g) was specifically limited to section 11580.9, and did not cover other sections of the article. Consequently, the court refused to apply it to a matter involving section 11580.1. (*Id.* at p. 181.) Section 11580.2, subdivision (b)(2) is no more a part of section 11580.9 than section 11580.1 is. Accordingly, we follow the reasoning of *Western Pioneer* in holding as of 1979 a certificate of self-insurance also could not be considered a policy of automobile liability insurance for purposes of section 11580.2, subdivision (b)(2).[5]

---

[5] We note, however, that the Legislature accepted the *Western Pioneer* court's invitation to extend the effect of section 11580.9, subdivision (g) by amending the statute in 1983 to read "[f]or purposes of this *article* . . ." instead of "purposes of this *section.*" (Ins. Code, § 11580.9, subd. (g), italics added.) Thus, our holding in this case is limited to pre-1984 situations. Now, in 1984, a certificate of self-insurance must be considered as a policy of automobile liability insurance, and the victim of an insolvent self-insured would fall under the provisions of the "insurer's solvency protection" of section 11580.2, subdivision (b)(2). Thus, the carrier of uninsured motorist protection is obligated to pay uninsured motorist benefits to its policyholder only if the insolvency of the tortfeasor occurs within one year of the date of the accident. (Ins. Code, § 11580.2, subd. (b)(2).) The carrier would *not* be liable for insolvencies of *self-insureds* occurring more than one year after the accident. Insolvencies of *insurance companies* occurring more than one year after the accident are protected through operation of the California Insurance Guarantee Association (CIGA), of which insurance companies are required to be a member. (Ins. Code, § 1063 et seq.)

This seeming contradiction may be an inadvertent and unintended legislative result of the 1983 amendment to section 11580.9, subdivision (g). To remedy its result, perhaps possessors of certificates of self-insurance should be required to contribute to CIGA, or the one-year limitation should specifically exclude insolvent self-insureds. In any event, we believe

Because self-insurance certificates were not the equivalent of automobile liability insurance policies as of 1979, we conclude Golden State was not a "liability insurer" within the meaning of section 11580.2 as of that time. Therefore the additional definition of "uninsured motor vehicle" in the second paragraph of subdivision (b) of that statute and the limitation of the "insurer's solvency protection" contained therein do not apply in this case. As a result the "insurer's solvency protection" provision was not present as a bar to prevent people injured by self-insureds who became insolvent more than one year after the accident from recovering from their own uninsured motorist carriers. Thus this provision does not bar recovery by the Garcias against the Auto Club.

## IV. *Conclusion*

In summary, we hold that under the law applicable in 1979 a self-insurer who was subsequently adjudicated bankrupt was no longer self-insured within the meaning of California's financial responsibility law. Thus the formerly self-insured vehicles became "uninsured motor vehicles" within the meaning of Insurance Code section 11580.2, subdivision (b). Accordingly the injunction enjoining the Garcias from arbitration proceedings against the Auto Club pursuant to the uninsured motorist provisions of the Garcias' automobile liability policy with the Auto Club must be dissolved.

We note that the 1983 legislative amendment of Insurance Code section 11580.9, subdivision (g), necessarily limits our holding to pre-1984 cases. This section now deems certificates of self-insurance to be policies of automobile liability insurance throughout article 2 of the Insurance Code. This includes section 11580.2 which places limits on uninsured motorist coverage where the tortfeasor's liability insurer becomes insolvent. A post-1983 self-insurer would now be guaranteed solvent by the insurer's solvency protection of section 11580.2, subdivision (b)(2) for only one year following the date of an accident. Accordingly, in the future a person injured by a self-insured who became insolvent more than a year after the accident would have no recourse against his own uninsured motorist carrier. Nor does it appear he would be able to recover from the California Insurance Guarantee Association (CIGA) which only provides recovery for people hurt by tortfeasors insured by insolvent insurance companies.

This leaves a gap in the comprehensive scheme of automobile compensation the California Legislature evidently intended to construct. If someone is injured by an insured motorist whose insurance company becomes insol-

---

the point to be worthy of further legislative consideration and invite the Legislature to consider the issue.

vent more than a year after the accident, he can recover from CIGA. But if this same person were to suffer that same injury at the hands of a self-insured motorist who went bankrupt more than a year after the accident he would have nowhere to go. His uninsured motorist coverage would not save him even though the driver who hurt him never carried insurance and was personally unable to compensate the injuries. We do not assume the Legislature intended to leave this unfortunate class of injured drivers entirely without compensation. Thus we commend this issue to the Legislature for its consideration.

## V. *Disposition*

The judgment is reversed and the case remanded for further proceedings consisent with this opinion.

Thompson, J., concurred.