230 Cal.App.3d 1010 (1991)
281 Cal. Rptr. 917
UTAH PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, Plaintiff and Appellant,
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant and Respondent.
Docket No. C008392.
Court of Appeals of California, Third District.
May 29, 1991.
*1013 COUNSEL
Shepard, Haven & Loewen, James B. Knezovich, Ronald R. Haven, Gregory H. Brown and Tim Dalton Dunn for Plaintiff and Appellant.
Gassett, Perry & Frank, Jacquelyn K. Wilson and Mary E. Wrightson for Defendant and Respondent.
OPINION
SIMS, Acting P.J.
Insurance Code section 11580.2 requires all insurance policies on motor vehicles principally used in California to include uninsured motorist coverage. (All statutory references are to section 11580.2 of the Insurance Code unless otherwise indicated.) The definition of an "uninsured motor vehicle" for purposes of this provision includes a vehicle for which liability insurance has been obtained, but the insurer has become insolvent. (Subd. (b)(2).)
Subdivision (b)(2) also provides in relevant part: "An insurer's solvency protection shall be applicable only to accidents occurring during a policy period in which its insured's motor vehicle coverage is in effect where the liability insurer of the tortfeasor becomes insolvent within one year of the accident." (Italics added.)
We must decide whether the statute's one-year limit on insolvency coverage is to be read into every California motor vehicle insurance policy, or whether an insurer may contract with its insured to provide greater insolvency protection than the statute requires. Specifically, when an insurance policy provides that the insurer will pay damages on any accident caused by the owner or operator of an uninsured motor vehicle where the tortfeasor's insurance company "is or becomes insolvent," without mention of any time limit on the coverage, is the one-year limit of subdivision (b)(2) incorporated into the policy by operation of law? We hold it is not.
The question arises in this case out of an action for declaratory relief. Plaintiff Utah Property and Casualty Insurance Guaranty Association (UPCIGA) assumed the coverages of a Utah insurance company which became insolvent more than one year after a fatal accident caused by its insured. UPCIGA brought suit to obtain a determination whether UPCIGA or defendant United Services Automobile Association (USAA), the decedent's insurer, was liable for paying the balance of a stipulated judgment in a *1014 wrongful-death action brought by the decedent's survivors. The case was tried by court trial on stipulated facts. The trial court found for defendant. We shall reverse.

FACTS
On May 22, 1983, Alice Lopiccolo died when the car driven by her husband Ernest Lopiccolo struck the rear of a stalled tractor-trailer in California. Mr. Lopiccolo, a California resident, carried an insurance policy issued by USAA (defendant herein) which included uninsured motorist coverage with limits of $300,000. This policy provided that coverage would apply to an accident caused by the owner or operator of an uninsured motor vehicle, defined so as to include a vehicle to which insurance applies at the time of the accident but the insuring company "is or becomes insolvent." The policy placed no restriction on the time within which the insuring company had to become insolvent.
The driver of the tractor-trailer was employed by Pacific States Transports, Inc. (PST), which owned the vehicle. PST, a company headquartered in Utah, was insured at the time of the accident by Enterprise Insurance Company (Enterprise). The Enterprise policy was issued in Utah.
Ernest Lopiccolo and his children timely sued PST in the United States District Court for the Eastern District of California for the wrongful death of Alice Lopiccolo.
In December 1986 the wrongful-death suit settled. It was agreed that the plaintiffs would receive $235,000. Of this, USAA agreed to pay $25,000 on plaintiff Ernest Lopiccolo's behalf pursuant to a counterclaim against him as the driver of the vehicle in which his wife was killed. Enterprise was to pay the remaining $210,000 on behalf of PST and its employee, the driver of the tractor-trailer.
In February 1987, before the completion and funding of the settlement agreement, Enterprise became insolvent. Because PST was a resident of Utah, UPCIGA (plaintiff herein), Utah's casualty insurance guaranty association, assumed PST's defense.
UPCIGA contended that under Utah law it was forbidden to pay any claim until all other sources of insurance had been exhausted, and that because USAA's uninsured-motorist coverage placed no time limit on insolvency protection, USAA was liable for the $210,000 balance of the settlement. USAA responded that its insolvency coverage was limited to one year *1015 following the date of the accident because the one-year limit of subdivision (b)(2) was incorporated into its policy as a matter of law.
After UPCIGA, USAA, and Lopiccolo entered into a stipulation to preserve the amount due on the settlement and UPCIGA funded that amount, UPCIGA filed this action for declaratory relief against USAA in Sacramento County Superior Court.
After a hearing, the trial court found that subdivision (b)(2)'s time limitation was incorporated into USAA's policy by operation of law, relying on Samson v. Transamerica Ins. Co. (1981) 30 Cal.3d 220 [178 Cal. Rptr. 343, 636 P.2d 32]. Judgment was thereafter entered for defendant. UPCIGA's appeal followed.

DISCUSSION

I

The Policy on Its Face Provides for Coverage.
(1) "The rights of the parties are to be determined by the terms of their policy, provided such policy grants benefits equal to or greater than is required by the Uninsured Motorist Act. [Citations.]" (Lumberman's Mut. Cas. Co. v. Wyman (1976) 64 Cal. App.3d 252, 257 [134 Cal. Rptr. 318]; Grunfeld v. Pacific Auto. Ins. Co. (1965) 232 Cal. App.2d 4, 6 [42 Cal. Rptr. 516], and authorities there cited.) "The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert. [Citation.]" (Crane v. State Farm Fire & Cas. Co. (1971) 5 Cal.3d 112, 115 [95 Cal. Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].)
(2a) The instant policy says it covers a vehicle to which insurance applies at the time of the accident but the insuring company "is or becomes insolvent." Because no time limitation is placed upon insolvency, a layperson reading the policy would have no reason to suspect that the insolvency would have to occur within a year of the accident. Rather, a straightforward reading of the policy would lead the reader to conclude that if a vehicle was insured at the time of the accident, the vehicle would be covered, provided the insurer of the vehicle became insolvent at some time in the future. In short, if one looks exclusively at the USAA policy, there is coverage for the subject accident as UPCIGA contends.

*1016 II

The One-year Limitation of Subdivision (b)(2) Is Not Incorporated in the Insurance Policy; Rather, the Policy Affords Greater Coverage Than Is Required by Law.
USAA contends that even if the policy on its face provides for coverage, there can be no coverage because section 11580.2 forbids it. USAA first argues the one-year limitation in subdivision (b)(2) is incorporated in the insurance policy as a matter of law.
USAA first cites the case relied on by the trial court: Samson v. Transamerica Ins. Co., supra, 30 Cal.3d 220. USAA finds the following language from Samson dispositive: "Where insurance coverage is required by law, the statutory provisions are incorporated into the insurance contract. `The obligations of such a policy are measured and defined by the pertinent statute, and the two together form the insurance contract....' (6c Appleman, Insurance Law and Practice (Buckley ed. 1979) § 4463, pp. 615-617 [].)" (Id. at p. 231.)
However, there are two problems with USAA's reliance upon Samson. The first is that USAA's theory cannot be reconciled with Lumberman's Mut. Cas. Co. v. Wyman, supra, 64 Cal. App.3d 252.
At issue in Lumberman's was subdivision (c)(3) which provides:
"(c) The insurance coverage provided for in this section does not apply either as primary or as excess coverage:
".... .... .... .... .... .... ....
"(3) To bodily injury of the insured with respect to which the insured or his or her representative shall, without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor."
The uninsured motorist provisions of the applicable insurance policy contained the following exclusion: "This policy does not apply ...: ... [¶] `(b) to bodily injury to an insured with respect to which such insured, his legal representative or any person entitled to payment under this coverage shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor; ...'" (Lumberman's, supra, at pp. 256-257.) This language tracked subdivision (c)(3), *1017 except that it did not contain the additional statutory exclusion "or prosecute to judgment any action...." (64 Cal. App.3d at pp. 255, 257.)
The appellant in Lumberman's, after dismissing two of three defendants to an action arising out of an accident in which he was struck by a motorcycle, proceeded to judgment against the third defendant and lost; he then sought to recover under the policy. The insurer denied coverage on the ground that all the statutory exclusions of subdivision (c)(3) formed part of appellant's policy as a matter of law, even though the provision "or prosecute to judgment any action" was not set forth in the policy. (64 Cal. App.3d at p. 254.) The trial court rendered judgment for the insurer.
The reviewing court reversed, concluding the rights of the parties to an insurance policy under section 11580.2 are to be determined by the terms of their policy, provided such policy grants benefits equal to or greater than the Uninsured Motorist Act requires. (64 Cal. App.3d at p. 257.) Moreover, although an insurance company can limit the coverage of a policy issued by it as long as its limitation conforms to the law and is not contrary to public policy, such a limitation must be expressed in the plain language of the insurance contract. (Id. at p. 259.)
Despite the fact that the statutory exclusions set forth in subdivision (c)(3), begin with the clause "The insurance coverage provided for in this section does not apply either as primary or as excess coverage: ..." (italics added), the Lumberman's court held that subdivision (c)(3) merely defines what exclusions are permissible under the statute. Unless an insurer has incorporated such exclusions expressly and plainly into its policy, therefore, it may not invoke them to limit coverage to its insured. (64 Cal. App.3d at pp. 259-260.) This holding was mandated, in the court's view, by the standard rules peculiar to the interpretation of insurance contracts, under which the policy should be read as a layperson would read it, any exclusionary clause must be conspicuous, plain, and clear, and any ambiguity or uncertainty must be resolved against the insurer. (Id. at p. 259; see Crane v. State Farm Fire & Cas. Co., supra, 5 Cal.3d at pp. 115-116.)
We see no material difference between Lumberman's and this case. To the extent USAA relies on the "mandatory" language of subdivision (b)(2) ("An insurer's solvency protection shall be applicable only ... where the liability insurer of the tortfeasor becomes insolvent within one year of the accident"), similar to the language of subdivision (c)(3), Lumberman's demonstrates that this reliance is misplaced.
(3) Although "The word `shall' generally expresses a mandatory intent (Hogya v. Superior Court (1977) 75 Cal. App.3d 122, 133 []; Fair v. *1018 Hernandez (1981) 116 Cal. App.3d 868, 876 []), ... sometimes it will not be found to do so. (Jacobs v. State Bar (1977) 20 Cal.3d 191, 197 [].) Whether `shall' is construed as mandatory or directory depends upon the legislative intent. (Id. at p. 198.)" (People v. Callegri (1984) 154 Cal. App.3d 856, 866 [202 Cal. Rptr. 109].) The court in Lumberman's found that section 11580.2, construed as a whole, revealed the Legislature's intent not to impose mandatory ceilings on coverage under the act, even though the language of particular provisions might appear mandatory if read out of context.
(2b) USAA attempts to distinguish Lumberman's on the ground that the policy therein "deleted" terms from the statutory exclusion, showing the insurer's intent to provide greater coverage than the statute required, whereas USAA's policy herein reveals no such intent because it is simply "silent as to the time period to which [insolvency] protection applies." This is a distinction without a difference. The policy in Lumberman's could just as easily be called "silent" with respect to the statutory exclusion at issue in that case; alternatively, one could say that USAA "deleted" the one-year limit set forth in subdivision (b)(2) by failing to write that limit into its policy. Moreover, an insurer's after-the-fact claim about its intent is immaterial: if the policy on its face does not reveal that purported intent, the insurer may not invoke it to alter the plain meaning of the policy terms.
Like USAA in the present case, the insurer in Lumberman's argued that an exclusion which it had failed to incorporate in its policy should nevertheless be read into the policy as a matter of law because the statutory language by its terms applied to all uninsured-motorist coverage. The court rejected this contention because the purpose of section 11580.2 is to provide a required floor for coverage, not a required ceiling. Therefore, if section 11580.2's coverage provisions are less favorable to an insured than those which the insurer chose to write into its policy, the statutory provisions may not be read into the policy to the insured's detriment, even where the statutory language appears mandatory. (64 Cal. App.3d at pp. 259-260.)
There is another reason why Samson's rule, providing for incorporation of statutory provisions into an insurance policy, should not be applied in this context. In California, the rule of statutory incorporation is traceable to Wildman v. Government Employees' Ins. Co. (1957) 48 Cal.2d 31 [307 P.2d 359]. There, a policy of automobile liability insurance was ambiguous with respect to coverage for permissive users. The court concluded the ambiguity had to be interpreted in favor of coverage because, inter alia, sections of the Vehicle Code then required that such insurance provide coverage for permissive users. (Id. at pp. 38-40.) (4) The Wildman court "determined that the *1019 financial responsibility provisions of the Vehicle Code must be construed as a part of every policy of automobile insurance since `the public policy of this state is to make owners of motor vehicles financially responsible to those injured by them....'" (National Ins. Underwriters v. Carter (1976) 17 Cal.3d 380, 387 [131 Cal. Rptr. 42, 551 P.2d 362].)
To our best knowledge the Wildman doctrine of statutory incorporation has been uniformly applied to find coverage required by statutes where insurance policies otherwise do not afford coverage.[1] We have been cited no California case, nor are we aware of any, holding that statutory provisions may be incorporated in an insurance policy so as to limit coverage otherwise provided by the policy.
*1020 (2c) Samson v. Transamerica Ins. Co., supra, 30 Cal.3d 220, relied upon by USAA, illustrates the foregoing application of the Wildman rule. There, the issue was whether an insurer could exclude a pickup truck from coverage under a common-carrier policy which was required under Public Utilities Code sections 3631 and 3632 to cover "`each vehicle used or to be used in conducting the service performed by each such highway carrier.'" (Id. at p. 230, original italics.) The insurer argued the pickup truck was not covered because the policyholder had obtained his policy to cover only a tractor-trailer, and only that vehicle was named in the policy. The court held that because the policyholder had used the pickup truck to perform a service as a highway carrier, the policy covered the truck as a matter of law. (Id. at pp. 229-236.)
In a nutshell, Samson holds that every insurance policy must be read so as to provide the minimum coverage required by law under a policy of that type, even where the policy on its face fails to do so. It does not hold, as USAA would have it, that an insurance policy which on its face provides more than the minimum coverage required by law must be read so as to eliminate that extra coverage.
USAA also relies on Robles v. California State Auto. Assn. (1978) 79 Cal. App.3d 602 [145 Cal. Rptr. 115]. There, the issue was whether section 11580.2 prohibited an uninsured motorist policy's territorial exclusion of coverage for losses in Mexico. (Id. at p. 608.) Rejecting the insured's arguments that the exclusion violated public policy, the court held that it was permitted by subdivision (j), which provided, in the event of the insurer's insolvency, for modification of the limitation provisions of subdivisions (b) and (i) "`in the event the accident occurs in any other state or foreign jurisdiction to which coverage is extended under the policy. ...'" (Id. at p. 610, original italics.) In other words, the insurer had not attempted, as in Samson, to limit coverage to less than the statute required; nor had it attempted, like USAA herein, to limit facially unrestricted coverage by invoking a statutory limitation not written into its policy. The insurer had simply complied with the requirements of the statute, and the court held it was not required to do more. Therefore Robles is not authority for the proposition that an insurer whose policy provides greater coverage than mandated by the statute can invoke the statute to limit that coverage.
There are good reasons not to apply the Wildman rule so as to accomplish a statutory limitation of coverage otherwise afforded by a policy. As we have noted, the purpose of the Wildman rule is to guarantee the financial responsibility of owners of vehicles to those injured by them. (National Ins. Underwriters v. Carter, supra, 17 Cal.3d at p. 387.) "Section 11580.2 of the *1021 Insurance Code is one facet of the entire financial responsibility law (Inter-Insurance Exchange of Auto. Club v. Lopez, 238 Cal. App.2d 441, 446 [47 Cal. Rptr. 834]), and is `designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' (Continental Cas. Co. v. Phoenix Constr. Co., 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914].)" (Modglin v. State Farm Mut. Automobile Ins. Co. (1969) 273 Cal. App.2d 693, 698 [78 Cal. Rptr. 355].)
Allowing statutory provisions to limit coverage otherwise provided by a policy would not encourage financial responsibility but would have the opposite effect. Laypersons cannot be expected to know of statutory limitations or exclusions on coverage not contained in their insurance policies. Trusting the language of their policies, laypersons will not seek coverage they think they have. Thus, should statutes be allowed to narrow or limit coverage otherwise provided by a policy, the net result would be unanticipated gaps in coverage or, ultimately, a failure of financial responsibility. That result cannot be squared with the rationale underlying the Wildman rule directing that statutory language be incorporated in an insurance policy. Moreover, this conclusion is not unfair to insurance companies because, unlike laypersons, insurance companies are fully capable of knowing about statutory restrictions on coverage and of incorporating the restrictions in the language of their policies.
We therefore conclude the one-year limitation in subdivision (b)(2) was not incorporated in the subject insurance policy so as to limit coverage otherwise afforded by the policy. Rather, the policy afforded coverage in addition to that required by the statute. (Lumberman's Mut. Cas. Co. v. Wyman, supra, 64 Cal. App.3d at p. 257; see McKinney v. Farmers Ins. Exch. (1973) 32 Cal. App.3d 947, 949 [108 Cal. Rptr. 581].)
Our conclusion is not altered by out-of-state cases cited by the parties.
In addition to the California cases discussed above, USAA cites several out-of-state cases as persuasive authority: Null v. State Farm Mut. Auto. Ins. Co. (Mo. Ct. App. 1981) 614 S.W.2d 280, LaSalle v. Kubelka (La. Ct. App. 1989) 544 So.2d 523, and Manning v. Travelers Insurance Company (Fla. 1971) 250 So.2d 872. However, these cases are either inapposite or unpersuasive.
In Null, supra, the court had to decide whether the two-year time limit for insolvency protection coverage under Missouri's uninsured-motorist statute *1022 (Mo. Rev. Stat. § 379.203(3) (West Supp. 1991)) should be read into a standard-form policy term, like USAA's herein, which put no time limit on such coverage. The court concluded that the policy's failure to mention a time limit created an "ambiguity" which was "cured" by the statute; therefore the two-year statutory time limit was part of the policy. (614 S.W.2d at p. 282.)
As we have said, we do not think a layperson would perceive any ambiguity in the policy. However, assuming for the sake of argument the policy term is ambiguous, the court's conclusion is unconvincing. As a commentator has pointed out (Widiss, Uninsured and Underinsured Motorist Coverage (2d ed. 1990) § 8.17, p. 388, fn. 7), it is hard to reconcile this holding with the rule that ambiguities in an insurance contract must be construed in favor of the insured. (See, e.g., Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 269 [54 Cal. Rptr. 104, 419 P.2d 168].) The court acknowledged this rule, but apparently found it was outweighed by "the general rule that existing and valid statutory provisions enter into and form a part of all policies of insurance to which they are pertinent and applicable as fully as if such provisions were written into said policies[.]" (614 S.W.2d at p. 282.) Since the court cited no Missouri authority in which this "general rule" had been invoked to construe an ambiguous policy term against an insured, it may be doubted whether Null's reasoning on this point was valid even as to Missouri law.[2] As we have noted, we are unaware of any California case in which the "general rule" relied on by the Null court has been used for this purpose. Accordingly, we decline to follow Null on this point.
Thus, whether or not we accept the Null court's premise that the policy was ambiguous, the court's conclusion does not follow.
LaSalle v. Kubelka, supra, 544 So.2d 523, is no more helpful than Null to USAA's position. In LaSalle the court held that the one-year time limit on insolvency protection coverage in the Louisiana statute (La. Rev. Stat. Ann. § 22:1406(D) (West 1978)) was to be read into a policy. (544 So.2d at p. 526.) The opinion does not disclose the terms of the policy, however; therefore the case is not on point.
Similarly, Manning v. Travelers Insurance Company, supra, 250 So.2d 872, does not assist USAA. Contrary to USAA's apparent characterization of this case, Manning does not hold that an insured's claim under an uninsured-motorist *1023 coverage provision is barred where the tortfeasor's insurer becomes insolvent after the statutory limitations period has expired. This issue was not presented in Manning. Rather, the court was called on to decide whether the one-year time limit of the Florida statute (former § 627.0851(3) (Fla. Stat. Ann. West 1961), identical except for numbering to former § 627.727(3), construed in Government Emp. Ins. Co. v. Burak (Fla. Dist. Ct. App. 1979) 373 So.2d 89 [see post]), unconstitutionally impaired freedom of contract or denied equal protection and due process of law. (250 So.2d at pp. 873-874.) As relevant to the present case, Manning held that the Florida statute did not impair freedom of contract because it did not prevent insureds from bargaining for terms more favorable to themselves. (Ibid.)[3]
UPCIGA relies primarily on Ky. Ins. Ass'n. v. State Farm Auto. Ins. (Ky. Ct. App. 1985) 689 S.W.2d 32 and Government Emp. Ins. Co. v. Burak, supra, 373 So.2d 89.
In Ky. Ins. Ass'n., supra, the court held that the Kentucky statute's one-year time limit (Ky. Rev. Stat. Ann. § 304.20-020(3) (Baldwin 1988)) must be construed in the context of the uninsured-motorist statute as a whole.[4] The court concluded that the statute was intended to establish a required minimum of coverage, not a required maximum. Therefore an insurer which put no time limit on its insolvency protection coverage on the face of its policy must be deemed to have agreed to provide coverage more favorable to its insured than the statute required. (689 S.W.2d at pp. 34-35.) However, as USAA points out, the Kentucky statute contains the express provision, absent in section 11580.2(b)(2), that an insurer may agree to offer more favorable terms than the statute requires, and the court specifically relied on that provision. (Ibid.)
Likewise, in Burak, supra, the court construed a standard-form policy term containing no time limit on insolvency protection coverage, like USAA's herein, as a voluntary offer of more favorable coverage to the insured than was required by Florida's statute, which at that time contained a one-year time limit on such coverage. (Fla. Stat. Ann. § 627.727(3) [now § 627.727(4)] (West 1984).) Like the Kentucky statute, the Florida statute included the express provision that an insurer may offer more favorable *1024 terms than the statute requires, and the court italicized this provision in citing the statute, suggesting that it relied on the provision as the basis for its holding. (373 So.2d at p. 90.)
The holdings of Ky. Ins. Ass'n., supra, 689 S.W.2d 32 and Burak, supra, 373 So.2d 89, being better reasoned than Null, supra, 614 S.W.2d 280 have significant persuasive force. However, USAA claims these holdings are inapposite because subdivision (b)(2) lacks the express provision contained in the Kentucky and Florida statutes: "Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insured than is provided hereunder." (689 S.W.2d at p. 34.) According to USAA, the absence of this provision from our statute is dispositive: "By implication, the California legislature omitted the `more favorable coverage' provision with the intent that insurers may not provide insolvency protection which is more favorable because it allows a longer time period, or an unlimited time period, for the insolvency to occur after the accident."
USAA's argument depends on the assumption that our Legislature considered and rejected the language in question when it adopted the insolvency-protection provision of subdivision (b)(2). The legislative history of this provision refutes that assumption. The "more favorable coverage" proviso was never contained in the bills which originally sought to amend subdivision (b)(2) by enacting the insolvency-protection provision, nor in the bill which ultimately succeeded in so amending the statute.[5] Therefore we cannot accept USAA's inference that by "omitting" the "more favorable coverage" proviso the Legislature revealed its intent to bar insurers from offering more favorable coverage than the required minimum. Since the Legislature could not have decided to reject language which was never presented to it, there is no basis for inferring that the absence of this language from subdivision (b)(2) throws any light on the Legislature's intent.
Although the uninsured motorist statutes of many states are broadly similar, and many clauses are found in most or all of these statutes, the statutes do not derive from any uniform law. (See generally Widiss, op. cit. supra, §§ 2.1-2.16, pp. 21-49.) (5) Thus it cannot be said that our *1025 Legislature, by not adopting any particular provision found in other states' statutes, has "omitted" that provision. Comparisons between the language of our statute and that of similar statutes enacted by other states reveal little, absent proof that our Legislature consciously chose not to adopt the language of those other statutes.
In any event, we are not persuaded by USAA's argument that the Legislature could preserve insurers' freedom to offer more favorable coverage than the statutory minimum only by adopting an express proviso to that effect. The court in Lumberman's, supra, held that subdivision (c)(3) did not deprive insurers of the freedom to offer terms more favorable to their insureds as to exclusions from coverage, even though subdivision (c)(3) has no proviso expressly guaranteeing insurers' freedom to do so. (64 Cal. App.3d at pp. 259-260.) In light of the act's overall purpose  to provide a guaranteed minimum of coverage, not a guaranteed maximum (ibid.)  we see no reason to reach a different conclusion as to subdivision (b)(2). Like the courts in Ky. Ins. Ass'n., supra, and Burak, supra, we hold that an insurer may not deny coverage under an insolvency protection clause by asserting a statutory time limit which the insurer failed to write into its policy.

III

Section 11580.2(b)(2) Is Not a Statute of Limitations.
USAA contends that even if subdivision (b)(2) is not incorporated in the insurance policy, the statute still bars the action because subdivision (b)(2) is a one-year statute of limitations. We cannot agree.
(6) "The collective term `statute of limitations' is commonly applied to a great number of acts which prescribe the periods beyond which suits may not be brought. [Citations.]" (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 306, p. 335, italics added.) "A statute of limitations is a statute that fixes the latest time within which an action may be brought." (43 Cal.Jur.3d, Limitation of Actions, § 1, p. 14, fn. omitted.) As a rule, where the Legislature intends to bar the bringing of suits beyond a certain date, it does so explicitly by employing either the term "statute of limitations" (e.g., Code Civ. Proc., §§ 312-363) or some equally unambiguous formula (e.g., "The action may be brought within three years from the date that payment was made hereunder" (§ 11580.2, subd. (g)).
(7) Subdivision (b)(2) is not a statute of limitations because it does not look like a statute of limitations, walk like a statute of limitations, or talk *1026 like a statute of limitations. It does not speak to the time for bringing actions. As we shall see in a moment, that task is accomplished by subdivisions (i) and (j). Subdivision (b)(2) addresses the question when an insurer's solvency protection "shall be applicable." Read in the context of the statute as a whole, subdivision (b)(2) specifies when an insurance policy need not afford solvency protection. But it is not a statute of limitations.
In aid of its contention that subdivision (b)(2) is a statute of limitations, USAA argues as follows:
"Legislative intent to limit insolvency protection is further shown by the express language of California Insurance Code § 11580.2(j). This subdivision refers to limitations periods on insolvency protection in other jurisdictions:
"`[I]n the event the accident occurs in any other state or foreign jurisdiction to which coverage is extended under the policy and the insurer of the tortfeasor becomes insolvent, any action authorized pursuant to the provisions of the section may be maintained within three months of the insolvency of the tortfeasor's insurer, but in no event later than the pertinent period of limitation of the jurisdiction in which the accident occurred.' [Emphasis added.]
"In using the term `period of limitation' in reference to insolvency protection, § 11580.2(b)(2) acknowledges that other jurisdictions have limitations periods for insolvency protection, and implies that the one year limitation contained in subdivision (b)(2) is also a period of limitation."
This argument is not well taken because the "period of limitation of the jurisdiction in which the accident occurred" refers to the period of limitation for commencing a tort action against the tortfeasor.
Thus, subdivision (j) must be read in conjunction with subdivision (i), which provides as follows: "(i) No cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section unless one of the following actions have been taken within one year from the date of the accident: [¶] (1) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction. [¶] (2) Agreement as to the amount due under the policy has been concluded. [¶] (3) The insured has formally instituted arbitration proceedings." (Italics added.)
"We think ... that the Legislature intended to assimilate and attach the uninsured motorist liability of the insurer to the original tort liability of the *1027 motorist tortfeasor as closely as possible. California law now provides dual protection for an insured motorist: he can sue a motorist tortfeasor within one year, whether the tortfeasor is insured or uninsured; or he can institute arbitration proceedings against his own insurer within one year if the tortfeasor is uninsured. If the insured motorist files a suit against the tortfeasor in a court of competent jurisdiction within one year, he is fully assured of a financially responsible defendant." (Firemen's Ins. Co. v. Diskin (1967) 255 Cal. App.2d 502, 509-510 [63 Cal. Rptr. 177].)
Thus, the suit that must be brought is a suit against the tortfeasor. When subdivision (j) provides that an action (in the described circumstances) must be brought "in no event later than the pertinent period of limitation of the jurisdiction in which the accident occurred," the reference is to the period of limitation for bringing the requisite tort action. Contrary to USAA's contention, subdivision (j) does not acknowledge "that other jurisdictions have limitations periods for insolvency protection." Therefore, subdivision (j) does not imply that subdivision (b)(2) is a statute of limitations.
USAA contends Interinsurance Exchange v. Garcia (1984) 160 Cal. App.3d 419 [206 Cal. Rptr. 621] aids its argument that subdivision (b)(2) is a statute of limitations.
Garcia held "that under the law applicable in 1979 a self-insurer who was subsequently adjudicated bankrupt was no longer self-insured within the meaning of California's financial responsibility law." (160 Cal. App.3d at p. 426.) In reaching this conclusion, the court noted, "The insurer's solvency protection only guarantees satisfaction where `the liability insurer of the tortfeasor' becomes insolvent within a year of the accident." (Id. at p. 425.) This is merely a reference to the statutory requirement of subdivision (b)(2); it does not suggest the statute is a statute of limitations.
In a footnote, Garcia noted that the Legislature had changed the law since 1979: "Thus, our holding in this case is limited to pre-1984 situations. Now, in 1984, a certificate of self-insurance must be considered as a policy of automobile liability insurance, and the victim of an insolvent self-insured would fall under the provisions of the `insurer's solvency protection' of section 11580.2, subdivision (b)(2). Thus, the carrier of uninsured motorist protection is obligated to pay uninsured motorist benefits to its policyholder only if the insolvency of the tortfeasor occurs within one year of the date of the accident. (Ins. Code, § 11580.2, subd. (b)(2).) The carrier would not be liable for insolvencies of self-insureds occurring more than one year after the accident." (160 Cal. App.3d at p. 425, fn. 5, original italics.) Once again, we view this dictum as merely a recitation of the requirements of subdivision *1028 (b)(2). The Garcia court had no occasion to consider any variance between the language of an insurance policy and subdivision (b)(2). Nor did the court have occasion to discuss whether subdivision (b)(2) functions as a statute of limitations. In short, Garcia does nothing to change our view that subdivision (b)(2) is not a statute of limitations.
Finally, we note that our construction of subdivision (b)(2) is in line with the rule that the entire automobile financial responsibility law must be liberally construed to foster its main objective of giving monetary protection to those persons who suffer grave injury through the negligent use of the highways by others. (Interinsurance Exchange v. Ohio Cas. Ins. Co. (1962) 58 Cal.2d 142, 153 [23 Cal. Rptr. 592, 373 P.2d 640].)
The trial court erred in granting judgment in favor of USAA.

DISPOSITION
The judgment is reversed. Appellant shall recover costs on appeal.
Marler, J., and Scotland, J., concurred.
NOTES
[1] See Interinsurance Exchange v. Ohio Cas. Ins. Co. (1962) 58 Cal.2d 142 [23 Cal. Rptr. 592, 373 P.2d 640] [exclusion in policy void where in conflict with statute]; Atlantic Nat. Ins. Co. v. Armstrong (1966) 65 Cal.2d 100 [52 Cal. Rptr. 569, 416 P.2d 801] [policy deemed amended to afford coverage]; International Business Machines Corp. v. Truck Ins. Exch. (1970) 2 Cal.3d 1026, 1028-1029 [89 Cal. Rptr. 615, 474 P.2d 431] [same]; Metz v. Universal Underwriters Ins. Co. (1973) 10 Cal.3d 45 [109 Cal. Rptr. 698, 513 P.2d 922] [exclusion in violation of statute invalidated]; Bonfils v. Pacific Auto. Ins. Co. (1958) 165 Cal. App.2d 152, 157-158 [331 P.2d 766] [statute deemed to afford broader coverage than policy]; American Auto. Ins. Co. v. Transport Indem. Co. (1962) 200 Cal. App.2d 543, 552 [19 Cal. Rptr. 558] [same]; Hendricks v. Meritplan Ins. Co. (1962) 205 Cal. App.2d 133, 138 [22 Cal. Rptr. 682] [uninsured motorist statute voided policy provision attempting to restrict coverage]; Voris v. Pacific Indemnity Co. (1963) 213 Cal. App.2d 29, 34 [28 Cal Rptr. 328] [uninsured motorist statute required coverage for motorcycle]; Campidonica v. Transport Indemnity Co. (1963) 217 Cal. App.2d 403, 406 [31 Cal. Rptr. 735] [statute required coverage for permissive user of vehicle]; Bohrn v. State Farm etc. Ins. Co. (1964) 226 Cal. App.2d 497 [38 Cal. Rptr. 77] [same]; Pacific Indem. Co. v. Universal etc. Ins. Co. (1965) 232 Cal. App.2d 541, 543 [43 Cal. Rptr. 26] [same]; United States Steel Corp. v. Transport Indem. Co. (1966) 241 Cal. App.2d 461, 465 [50 Cal. Rptr. 576] [same]; Hartford Accident & Indemnity Co. v. Transport Indemnity Co. (1966) 242 Cal. App.2d 90, 91 [51 Cal. Rptr. 168] [same]; California Steel Buildings, Inc. v. Transport Indemnity Co. (1966) 242 Cal. App.2d 749, 753-754 [51 Cal. Rptr. 797] [same]; U.S. Fire Ins. Co. v. Transport Indem. Co. (1966) 244 Cal. App.2d 110, 112-113 [52 Cal. Rptr. 757] [same]; Stolte, Inc. v. Seaboard Surety Co. (1967) 250 Cal. App.2d 169, 172 [58 Cal. Rptr. 477] [same]; Abbott v. Interinsurance Exchange (1968) 260 Cal. App.2d 528 [67 Cal. Rptr. 220] [policy could not exclude coverage mandated by statute]; Valdez v. Federal Mut. Ins. Co. (1969) 272 Cal. App.2d 223, 234 [77 Cal. Rptr. 411] [same]; Modglin v. State Farm Mut. Automobile Ins. Co. (1969) 273 Cal. App.2d 693[78 Cal. Rptr. 355] [statute mandated coverage for vehicle garaged and used in California]; Mid-Century Ins. Co. v. Hernandez (1969) 275 Cal. App.2d 839, 843-844 [80 Cal. Rptr. 448] [statute mandated coverage for motorcycle]; Glens Falls Ins. Co. v. Globe Indem. Co. (1969) 276 Cal. App.2d 643 [81 Cal. Rptr. 28] [policy endorsement in conflict with statute unenforceable]; Great American Ins. Co. v. Globe Indem. Co. (1970) 8 Cal. App.3d 938 [87 Cal. Rptr. 653] [statute mandated coverage]; Associated Indem. Corp. v. King (1973) 33 Cal. App.3d 470, 473-474 [109 Cal. Rptr. 190] [policy language not in conflict with amended statute]; Contreras v. America, Compania General De Seguros, S.A. (1975) 48 Cal. App.3d 270, 281-282 [121 Cal. Rptr. 694] [exclusion void where in conflict with statute]; Ohio Farmers Ins. Co. v. Quin (1988) 198 Cal. App.3d 1338, 1348 [244 Cal. Rptr. 359] [attempt to exclude unnamed permissive users invalid]; Enterprise Co. v. Mulleague (1987) 196 Cal. App.3d 528, 536 [241 Cal. Rptr. 846] [where no waiver of uninsured motorist benefits, policy would provide coverage in amounts required by statute].
[2] Yet another ground for criticizing the Null court's holding is that it ignores the Missouri statute's express proviso: "Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder." (Mo. Rev. Stat. § 379.203(3).)
[3] In so holding Manning relied specifically on the Florida statute's express provision "`Nothing herein contained shall be construed to prevent any insurer from affording insolvency protection under terms and conditions more favorable to its insureds than is provided hereunder.'" (Former § 627.0851(3) (Fla. Stat. Ann. West 1961); see id. at p. 873.)
[4] Both the Kentucky statute and the Florida statute construed in Burak, supra, provide, like section 11580.2(b)(2), that an insurer's insolvency protection "shall be applicable only" within the specified time period. (Italics added.)
[5] The insolvency-protection coverage provision which now forms part of section 11580.2(b)(2) was introduced in two different bills during the 1967 Regular Session: Assembly Bill No. 1406 and Assembly Bill No. 2554. It was ultimately passed as part of Assembly Bill No. 1406, but the provision's taking effect was made conditional on contingencies which did not occur (Stats. 1967, ch. 1654, § 5, p. 4003); therefore the amendment of section 11580.2(b)(2) did not take effect in 1967. This amendment was reintroduced the next year by Senate Bill No. 163 (1968 Reg. Sess.), and became effective with the passage and signing of that bill into law. (Stats. 1968, ch. 277, § 2, p. 612.)